WALTERS-SOUTHLAND INSTITUTE *v.* WALKER, TRUSTEE.

4-9227                                              232 S. W. 2d 448

Opinion delivered June 19, 1950.

Rehearing denied October 2, 1950.

*C. Ewbank Tucker* and *Cracraft & Cracraft,* for appellant.

*Burke, Moore & Burke,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, The Walters-Southland Institute, is a school which has been operated at Lexa, Arkansas, since 1936 by the African Methodist Episcopal Zion Church. Appellee, W. W. Matthews, served as bishop of the Arkansas conference of the church and president of the school from 1936 until May, 1948. The exact nature of the organization of the school prior to 1946 is not clear from the record although it had a board of trustees and operated under auspices of the church.

In 1936 the institute purchased its 160-acre school site from the Masonic Lodge and executed a mortgage on said property to secure the payment of the purchase price. In 1940 the president and secretary of the school, acting under authority of the board of trustees, entered into an agreement with the lodge which provided for an extension of the time of payment of a balance of $5,500 remaining due on the purchase price at the rate of $500 annually beginning December 31, 1941. The agreement further provided for the execution of a $500 interest note payable October 1, 1941, which covered all interest due and payable for the 11-year extension period.

In March, 1946, appellee and five other members of the board of trustees consulted G. D. Walker, an attorney at Helena, Arkansas, with reference to the execution of a mortgage to Bishop Matthews to secure certain advances he had made to the school including payment of a $4,200 balance on the Masonic Lodge indebtedness. Upon investigation Mr. Walker ascertained that appellant had no corporate entity. Acting upon his advice, a petition was filed by appellee and 14 others in circuit court and an order entered incorporating appellant as a benevolent association pursuant to the provisions of Ark. Stats., §§ 64-1301—64-1312.

The articles of incorporation provide that the bishop of the conference shall be an ex-officio member and president of a board of trustees consisting of not less than nine nor more than fifteen members. The articles further provide that the board of trustees shall operate the institute in accordance with the doctrine and discipline

of the African Methodist Episcopal Zion Church and its
Department of Christian Education. The church disci-
pline provides that no debts shall be contracted by the
board of trustees without concurrence of the Board of
Christian Education which is authorized to exercise gen-
eral supervision and control over all educational institu-
tions of the church.

After a correction deed was obtained from the Ma-
sonic Lodge, a resolution was adopted at a meeting of
the board of trustees on April 2, 1946, authorizing the
execution of a deed of trust of the school property by
appellant in favor of G. D. Walker, as trustee for the
use and benefit of Bishop Matthews, to secure an indebt-
edness of $7,847.60 evidenced by four notes payable one,
two, three and four years from date bearing interest at
the rate of 6 per cent. per annum. The resolution recites
its adoption by a vote of six to 0 with Bishop Matthews
excusing himself from presiding and participating in the
proceedings. The notes and deed of trust were executed
by the vice-president and secretary on April 2, 1946, and
the deed of trust was filed for record on the same date.

On April 28, 1948, the vice-president and secretary
of appellant executed an unsecured note to Bishop Mat-
thews for $6,001.40, payable in 60 days. The minutes of
the meeting of the board of trustees held April 27, 1948,
authorizing the execution of this note reflect that the
meeting was presided over by Bishop Matthews and at-
tended by three other members of the board including
Etoriah Dryver who served as registrar and bookkeeper
of appellant for a seven-year period beginning in 1941.
Nine members of the board were noted as absent and two
as "present by proxy." The minutes further recite that
this note was given for further advances by appellee
which were used in the construction of a new building for
the school at a total cost of $49,029.11.

At a meeting of the General Conference of the church
at Louisville, Kentucky, in May, 1948, appellee was de-
posed as bishop on charges of forgery and immoral con-
duct. The charge of forgery grew out of an alleged
alteration by the bishop of a passport by changing his

date of birth shown thereon for the purpose of deceiving the conference and continuing himself in office as an active bishop. The second charge was based on his alleged association "openly" with Etoriah Dryver to whom he was secretly married in January, 1947. Although the conference determined that Bishop Matthews should not be deemed a retired bishop in the "usual, official use" of the term, it voted to allow him the usual retirement pay of one-half his former salary as bishop "as an act of mercy and out of consideration for his many years of service to the church."

On April 4, 1949, appellee and G. D. Walker, Trustee, brought this suit against appellant to foreclose the deed of trust of April 2, 1946, alleging failure of payment of three of the four notes secured by the deed of trust. By amendment to the complaint appellee also sought judgment for $6,001.40 and interest on the unsecured note executed on April 28, 1948.

While appellant in its answer and cross-complaint did not specifically deny the indebtedness to appellee, it alleged that the latter had sole active charge of the receipt and disbursement of all funds of the school from 1936 to 1948 and occupied the status of a trustee toward said institution; that during said years he controlled funds belonging to the school in excess of $120,000 without adequate records and a proper accounting thereof; that he caused the deed of trust and notes sued upon to be authorized at meetings of the board of trustees held without a quorum present and without approval of the Department of Christian Education as required by the discipline of the church; and that there were certain discrepancies in appellee's financial reports to the general conference and a failure to account for funds which the church records disclosed were delivered to him for the use and benefit of appellant. Appellant prayed for an accounting and that it be given credit upon any indebtedness found due appellee for all funds received by him belonging to appellant and not properly accounted for. By amendment to the cross-complaint it was also alleged that on account of the fiduciary relationship existing between the parties and the complicated accounting in-

volved, a master should be appointed to take proof and state an account between the parties.

At the conclusion of the trial, the chancellor made separate findings of fact in which he stated: ''The testimony is very confusing about the manner in which those books were kept and about whether Bishop Matthews owed the church and fraudulently kept back the church school's money that he had. There is nothing here in the record for the Court to make a finding as to any indebtedness due the church for anything whatever.'' A decree was entered awarding judgment for $7,108.92 in favor of appellee for the balance due on the three notes secured by the deed of trust and also for the amount of $6,504.56 on the unsecured note. The decree further ordered foreclosure of said deed of trust and sale of the school property unless the amount first found due was paid within 90 days. Appellant's prayer for an accounting and the appointment of a master to hear and state an account was denied and the cross-complaint dismissed for want of equity.

Appellant offered evidence to show that during the 12-year period appellee served as bishop and president of the board of trustees, he exercised almost exclusive control over the affairs of the institute. While his conference covered considerable territory, he maintained his residence at the school and devoted a large portion of his time to administering its affairs. He received and made deposits of all moneys sent to the school and signed all checks disbursing school funds. Two of the trustees in attendance at board meetings authorizing execution of the notes and deed of trust were ministers residing in Little Rock and Pine Bluff. Their testimony is to the effect that appellee dominated board meetings and that they followed his recommendations in all financial matters without question and without being advised as to the correctness of the amounts which he claimed to have advanced from time to time in operation of the school. While the financial reports given at board meetings were submitted by the registrar, other board members stated that they relied wholly upon appellee's recommendations in passing thereon and knew nothing about the actual

financial status of the institution. A majority of the board members, who are nominated by the bishop, were inactive insofar as this record discloses. The board meeting authorizing execution of the note for $6,001.40 was held about 10 days prior to the filing of charges against appellee at the General Conference.

There was·evidence that when appellee assumed the mortgage indebtedness to the Masonic Lodge, he represented to other trustees that interest payments to the lodge were too high and that he was willing to refinance the loan at a lower interest rate. Under the extension agreement with the lodge the interest rate was in fact much lower than the 6 per cent. rate charged by appellee in taking over the loan. After addition of other advances to the indebtedness due the Masonic Lodge the increased principal was made payable in four annual installments of more than $1,900 each under the refinancing agreement between appellant and appellee, while the extension agreement with the lodge provided for principal payments of only $500 annually over a period of 11 years.

After appellee was succeeded in office by Bishop R. L. Jones, appellant employed a certified public accountant to make an audit of the institute's books and records. This audit did not purport to be an exact reflection of the transactions of the school because of the incompleteness of the records presented and the short time (five days) spent in making it. However, the audit reflects certain discrepancies between the receipts and disbursements as shown on the records of the school and as reported to the general conference and the Department of Christian Education of the church, particularly during the four-year period prior to 1948. As shown by the audit, the books of the school show receipts of $13,-250.80 and disbursements of $7,237.21 for the year beginning June 1, 1944, and ending May 31, 1945, while reports forwarded to the Board of Christian Education of the church for that year show receipts of $19,959.42 and disbursements of $12,176.93. Similar discrepancies appear for subsequent years and will not be detailed here. Appellee was unable to explain these discrepancies stating that he at no time was bookkeeper or treasurer of appel-

608

lant and was not responsible for the reports drawn up by the registrar and approved by the board of trustees.

The record before us includes several hundred pages of exhibits of accounts, reports and cancelled checks involving hundreds of transactions and more than $100,000. In view of this complicated record and the fiduciary relation existing between appellee and appellant, the question here is whether the court erred in refusing to appoint a master to hear and state an account. A chancellor is clothed with considerable discretion in determining whether an accounting matter should be referred to a master. *Norden* v. *McCallister,* 207 Ark. 1101, 184 S. W. 2d 459. In the early case of *Bryan* v. *Morgan,* 35 Ark. 113, the court said: ''It was not erroneous in the Chancellor to refuse a reference to the Master to take and state the account, but it was not good practice. The Chancellor may, himself, take an account, announce the result, and decree accordingly. But this practice should be confined to simple and obvious cases, in order to save expense to litigants. In complicated transactions, justice cannot be well done without a reference.''

The issue here is similar to that involved in the case of *Excelsior White Lime Co.* v. *Rieff,* 107 Ark. 554, 155 S. W. 921. There the general manager and secretary-treasurer of a corporation sued the corporation for back salary alleging insolvency of the defendant. The corporation filed a cross-bill asserting that the plaintiff had full control of the corporation, that he had not accounted for certain assets, and prayed for an accounting. There, as here, the court was confronted with a voluminous and complicated record and it was impossible to determine whether the plaintiff-manager of the corporation had properly accounted for funds he had received in managing and directing the affairs of the corporation. After citing the rule stated in *Bryan* v. *Morgan, supra,* the court said: ''After spending much time on this record, the court has concluded that an injustice might be done one or the other of these litigants in attempting to state an account and strike a balance between them under the conditions of this record and it has accordingly determined and therefore orders that the cause be reversed

and remanded with directions to the chancellor to refer this record to a master to state this account; and that in stating this account, he charge the appellee with any excess of salary paid him and also with any funds not affirmatively shown to have been properly accounted for.''

Appellee points out that the plaintiff in the Rieff case was not only general manager and treasurer of the corporation, but actually kept the books and records and ran the affairs of the company while in the instant case the affairs of appellant were controlled by the board of trustees and the books were kept by the registrar-treasurer. It is true that appellee, as president of the board of trustees, was not required to perform many of the duties which the evidence discloses that he actually did perform in connection with the administration of the affairs of appellant. He collected, deposited and disbursed the school funds and apparently dominated and controlled the actions of the board of trustees. The fiduciary relation existing between the parties imposed upon appellee the duty to render a proper accounting of the funds handled by him particularly in matters in which he was personally interested. The existence of such fiduciary relation is one of the well recognized grounds for equity jurisdiction of a suit for an accounting. 4 Pomeroy's Equity Jurisprudence (5th Ed.), § 1421.

Appellee also argues that appellant failed to discharge the burden of proving there was something due it as a setoff against the indebtedness before it was entitled to an accounting. The applicable rule is stated in 1 C. J. S., Accounting, § 27, as follows: ''Where there is no balance due plaintiff from defendant, an accounting will not as a general rule, be ordered, since it would avail plaintiff nothing. On the other hand it has been held that the showing of a balance due plaintiff is not essential, since the party to whom the balance is due is the very matter to be determined; and an accounting has been held proper when it is necessary to show how money advanced by plaintiff in a business venture has been disposed of.'' It has also been held that an accounting may be had against a fiduciary to determine whether there is, in fact,

610

anything due the plaintiff. *French* v. *C. F. & T. Co.,* 124 Or. 686, 265 Pac. 443.

In view of the complicated record here involved, the fiduciary relation existing and the circumstances surrounding the transactions between appellee and appellant, we hold that it was error to refuse the appointment of a master. The decree is, therefore, reversed and the cause remanded with directions that this record be referred to a master to hear further testimony and state an account between the parties.