Donald A. McCORKLE *v.*
VALLEY FORGE INSURANCE CO. et al

CA 83-285                              665 S.W.2d 898

Court of Appeals of Arkansas
Division I
Opinion delivered March 14, 1984

*Lessenberry & Carpenter,* by: *Thomas M. Carpenter,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

LAWSON CLONINGER, Judge. This case arises as the result of a fire which occurred at a home located at #3 Cottonwood, Little Rock, Arkansas, owned by Donald A. McCorkle, appellant, and his former wife, Jean McCorkle McKim. After a police investigation, it was determined that the cause of the fire was arson. The home was insured against fire loss by appellee, Valley Forge Insurance Company, in the amount of $78,750 for the real property coverage. Personal property was insured for up to $39,375. Further, the expenses for loss of use were reimbursable up to $15,750. McCorkle made a claim for one-half the real property damage, $36,119.31 for personal property loss, and $15,750 for additional living expenses he incurred. The insurance company answered that the policy was void *ab initio* because of McCorkle's misrepresentations regarding the value of the property and alleged that McCorkle had conspired to commit arson.

After hearing all the testimony, the chancellor ruled that appellee had failed to prove that McCorkle was involved in the arson and held that appellee was responsible for any deterioration of the property since the fire occurred. Further, the chancellor initially decided to award appellant $21,040 for personal property loss.

On December 29, 1982, the chancellor issued another letter stating that McCorkle was only entitled to $66,277 for

the damage to real property. He also said that he was changing his mind and awarding no damages for the personal property. Finally, the chancellor refused to award damages for additional living expenses. Judgment was not entered until April 14, 1983. Appellant now brings this appeal, and appellee has cross appealed.

Appellant's first point for reversal is that the trial court erred in failing to declare the house a total loss and award damages pursuant to Ark. Stat. Ann. § 66-3901 (Repl. 1980). In his letter opinion, the chancellor noted that two years had expired since the fire. He said that the insurance company was justified in refusing to settle because of the fact that arson was the cause of the fire and there was evidence presented to indicate McCorkle might be involved. The chancellor held, however, that since he had found McCorkle was not involved in the arson, that the fire did not result in a total loss and that the damages the day after the fire were $53,222, the insurance company was responsible for any deterioration which may have occurred. He refused to accept the deposition of Harvey Mixon, an appraiser, as credible. Mr. Mixon regarded the house as a total loss on January 15, 1981. The appraiser never went inside the house, however, and the chancellor was not convinced that the house was beyond repair. Appellant now alleges that the chancellor erred in holding that the house was not a total loss and that the chancellor arbitrarily awarded 10% repair cost increases for two years for an award of $66,277.

The findings of the chancellor will not be disturbed unless they are clearly against a preponderance of the evidence, and when the issue turns largely on the credibility of the witnesses, the appellate court will defer to the superior position of the chancellor. *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W. 2d 404 (1981).

The only Arkansas case which has touched on this issue is *Employer's Liability* v. *Mid-State Homes*, 250 Ark. 789, 467 S.W.2d 386 (1971). There the Arkansas Supreme Court reversed the finding of the trial court and held that where the insured homeowner took no steps to protect the insured property against additional damage for three years follow-

ing the fire and there was ample evidence that additional damage was sustained, the insurer was not liable for the total loss of the building at the time of trial but was only liable under its contract for the cost of repairing the building within a reasonable time after the fire. In *Employer's Liability, supra,* the policy provided for immediate notice of any loss and provided that the insured protect the property from further damage. On the facts, approximately fifteen months elapsed between the date of the fire and the proof of loss provided to the insurance company. There was an additional delay of approximately fourteen months between Employer's intervention and the trial, and there was a total delay of three years and four months between the date of the fire and the entry of the decree. The court held that the homeowner was negligent in not reporting and following up on his claim against Employer's. The court also held, however, that Employer's was also negligent in its failure to ascertain the amount of damage to the building and in its handling of the claim even after it had notice of loss. Hence the court held that the equities were evenly balanced between the parties and that the preponderance of the evidence regarding the cost of repairs within a reasonable time following the damage caused by the fire was found in the testimony of Casey Jones, a construction contractor. Therefore, the insureds were only entitled to judgment for his maximum estimate of $5,300.

In the instant case, the insurance policy excluded from coverage neglect of the insured to use all reasonable means to save and preserve property at and after the time of loss. Further, the policy had a provision for the homeowner's duties after a loss occurs. One of the duties was to protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenditures. The chancellor found that the insurance company was responsible for the deterioration which occurred after the fire. However, he arbitrarily awarded a 10% repair cost increase because he refused to accept Mr. Mixon's testimony that the house was a total loss. Since we defer to the chancellor's superior position to judge the credibility of the witnesses, we must also disregard Mr. Mixon's testimony. We cannot, however,

sustain the chancellor's finding of a 10% repair cost increase because there is no evidence in the record to support it. Because there is no other evidence of deterioration of the property since the fire, we reduce the amount of damages to $53,222, representing the loss the day after the fire.

Appellant's second point for reversal is that the court erred in failing to sustain the owner's evaluation of his personal property and to award that amount of damage, specifically $36,119.31. The trial court had pointed out initially that appellant had proved his damages to personal property. The trial court even pointed out that there was no evidence to show the property was not worth what McCorkle stated. Yet in a second letter the trial court decided to award McCorkle no damages for his loss of personal property. It is a rule in Arkansas that testimony of the owner of personal property concerning the value of that property is sufficient evidence to prove value. *Farm Bureau Mutual Insurance Co.* v. *Cusick*, 235 Ark. 27, 356 S.W. 2d 740 (1962). However, a party seeking damages has the burden of proving the claim, and, if no proof is presented to the trial court that would enable it to fix damages in dollars and cents, the court cannot award damages. See *Winkle* v. *Grand National Bank*, 267 Ark. 123, 601 S.W.2d 559 (1980); *Mason* v. *Russenberger*, 260 Ark. 561, 542 S.W.2d 745 (1976).

In the instant case, Mr. McCorkle testified extensively regarding the destruction of personal property in the loss. Further, he introduced into evidence an itemized statement with regard to the replacement value of the personal property lost. This evidence, however, was refuted by appellant's ex-wife who alleged that many of the items listed were now in her possession and that the price listed for a part of the furniture was too high. The chancellor chose to believe Mrs. McKim and held that appellant's itemized statement was at best an exaggeration and at worst a fraud on the insurance company. We cannot say his decision is clearly against a preponderance of the evidence.

Similarly, appellant's third point for reversal is that the court erred in failing to award any damages to McCorkle for additional living expenses. In contrast, though, to the

owner's evaluation of his personal property, appellant did not offer any evidence which would enable the trial court to fix damages in dollars and cents. See *Winkle* v. *Grand National Bank, supra.* Appellant testified that for several months he stayed in a motel that charged him between $800 and $900 a month, without stating the number of months or the specific monthly charge. He did not have any invoice or cancelled check to prove the amount of those payments. In fact, he did not offer any specific evidence to justify his prayer for $15,750 in damages for additional living expenses. Appellant's only allegation is that he did incur expenses to maintain the standard of living he had enjoyed prior to the fire. It would have been an easy task for Mr. McCorkle to have provided the court with receipts or other evidence with respect to his living expenses. This he did not do and this point is without merit.

Valley Forge argues on cross appeal that the court erred in failing to find that arson was caused by the appellant or persons acting in concert with him. The incriminating evidence which was presented at trial is set out as follows:

1. The insurance coverage on the property was increased in October of 1979 by 40%, before the fire occurred in January of 1980.

2. The house was jointly owned by appellant and his ex-wife, and they had been ordered in October before the fire to sell the property within 60 days.

3. McCorkle had been sentenced to serve 15 years in the penitentiary for kidnapping, and it was alleged that he had no use for the house for several years.

4. Telephone records from a Jonesboro motel indicate that appellant called his answering service twice within a period of four minutes on midnight the night of the fire. Cross appellant argues that this should be considered as evidence of an attempted alibi by Mr. McCorkle.

5. The physical evidence indicated that newspapers

soaked with diesel fuel had been stuffed inside cabinets, furniture, holes hacked in the walls, floors and ceiling. Further, neighbors had heard pounding noises eminating from his house the Sunday before the fire. A fire investigator testified that it would have taken the person who set the house up for the fire a long time to do his work.

The evidence, although circumstantial, was sufficient to support a finding that appellant was in fact guilty of arson. However, the chancellor found that the insurance company had failed to prove that McCorkle had committed arson and therefore McCorkle was entitled to recover. It is our opinion that the chancellor's decision on this issue was not clearly against a preponderance of the evidence.

Cross appellant also argues that the court erred in refusing to find that Mr. McCorkle attempted to defraud the insurance company and therefore the policy should have been void *ab initio*. The chancellor had found that Mr. McCorkle's inventory of personal property listed was at best an exaggeration and at worst a fraud upon the insurance company. He was unable to say, however, that Mr. McCorkle had intentionally perpetrated a fraud upon the insurance company and declined to hold the policy void *ab initio*. The insurance company attempted to show that many of the items which Mr. McCorkle had listed had been removed from the house by his ex-wife and cross appellee, Jean McKim. Further, Mrs. McKim testified that many of the items were bought at different places from which Mr. McCorkle had stated and at a lower price. However, Mr. McCorkle never stated what price he had paid for the articles but instead stated what their replacement cost would be. This evidence went undisputed.

Cross appellant finally argues that the chancellor erred in awarding damage to real property for the deterioration of the property from the time of the loss to the time of the trial. We agree, although for different reasons stated earlier in the opinion.

Accordingly, the decision of the chancellor is affirmed as modified.

MAYFIELD and CRACRAFT, JJ., agree.