A & P's HOLE-IN-ONE, INC. *v.* Sherry MOSKOP

CA 91-292                                                  832 S.W.2d 860

Court of Appeals of Arkansas
Division II
Opinion delivered June 10, 1992

*T.B. Patterson, Jr.*, for appellant.

No response.

GEORGE K. CRACRAFT, Judge. A & P's Hole-In-One, Inc., appeals from an order of the Pulaski County Chancery Court dismissing its complaint, which sought from Sherry Moskop, president of A & P, a full accounting, payment for all unaccounted-for corporate funds, and damages for harm to its reputation and goodwill. We find sufficient merit in one point raised to warrant reversal and remand for further proceedings.

Appellant, A & P's Hole-In-One, Inc. (the corporation), brought this action in the chancery court of Pulaski County against appellee, Sherry Moskop. In October 1988, appellee and

Vernon O. Parker formed the appellant corporation. Pursuant to an agreement between appellee and Parker, Parker advanced the sum of $40,000.00 to be deposited in the corporation account that was to represent a $20,000.00 contribution from each of them. Each would then own equal interests in the corporation. Parker's advance made on behalf of appellee was evidenced by a note payable in monthly installments and secured by a lien on her fifty percent of the corporation stock. According to their written agreement, all checks drawn on the corporate bank account would be signed by both appellee and Parker. The evidence reflects that Parker delivered his check for $40,000.00 to appellee, and she executed the note and security agreement. Parker advanced an additional $10,000.00 of his own funds into the corporate account before the business opened in March 1989.

The corporation engaged in the operation of a miniature golf course. In connection with this operation, the corporation also had a number of coin-operated video games from which it received one-half of all amounts collected. Appellee admitted that she was the president of the corporation and was the person that operated it. Appellee testified that her husband assisted her on occasion but "did what I told him." She admitted that Vernon Parker still worked full-time at his regular job even though he helped out in the evenings.

There was no dispute that appellee kept those company records designed to reflect all receipts and expenditures. According to the testimony, the cash register tapes and other documents showing receipts and disbursements were to be entered in the voucher book on a daily basis. Until mid-April 1989, the records were kept on the company premises. At appellee's suggestion, they were moved to her home and kept there.

At the end of the first six months' operation, appellee went on vacation, leaving operation of the business to Parker. Parker's suspicions were aroused when he discovered that, although the checkbook showed a balance of $7,000.00, a check for the lease payment was not honored because the bank balance was actually less than $300.00. In September 1989, appellee ceased to operate the business and transferred all of her interest in it to Parker in cancellation of the $20,000.00 note given at the time the corporation was formed. It was then learned that, although they

had agreed that all checks would be signed by both Parker and appellee, a number of checks had been written by appellee without Parker's signature or authorization. It was also learned that the account had been opened with an initial deposit of only $38,530.00. From the bank records, he also learned that some checks had been written on the company account to stores, shops, and suppliers for which he had not authorized payment. There was no explanation on the checks indicating for what purpose the payments were being made. Some of the checks were payable to members of appellee's family, and some, in substantial amounts, to appellee personally or to cash. There were canceled checks payable to her husband in excess of $3,000.00, for which there was no explanation.

Parker was able to locate some cash register receipts and other records in a box in the company office. Some others were delivered to him by appellee's husband. Parker never received tapes covering a two- or three-week period. The voucher book was not returned to the corporation, although demand had been made. It was learned from the owners of the video machines that they had paid the corporation over $3,500.00 as its share of the profits on those machines. From information available to the appellant corporation, Parker was able to partially reconstruct its financial affairs. Parker's figures showed that at least $81,206.04 had been received by the corporation, but the bank records and canceled checks would only account for $66,052.70 of that amount. The balance remained unexplained. In addition, the corporation began receiving complaints from a number of suppliers that bills rendered to the corporation had not been paid. Parker advanced an additional $3,500.00 from his personal funds to the corporation to pay those unpaid bills.

Appellee testified that without records she was unable to state the purpose for a number of those checks written to herself, her husband, or places such as Wal-Mart, Sam's, and Family Home Center. She testified that some of the checks payable to her brother were for his labor in construction of the miniature golf course. She testified that she was unaware of the total amount of money that had been received by the corporation, the total amounts disbursed, or the purpose of many disbursements.

At the conclusion of the hearing, the court made the

following announcement:

> As for setting the amount of damages, I'd have to have some specific amount. I can't just award some speculative amount of damages. Quite frankly, in this situation, I'm not certain that it's possible to arrive at a specific amount, at least from the way it appears from here, lacking a more thorough bookkeeping system and method of keeping receipts and records of revenue and so forth. It's just impossible to tell. And that, of course, affects the ability of [appellee] to give an accounting. You say you don't have the books and records; she says she doesn't have the books and records. I don't know how an accounting can be given.
>
> In these cases the person who is asking for relief, the plaintiff, which would be [the corporation], has the burden of proving what we call a preponderance of the evidence. That means that you just have to have the weight of evidence on your side. And I can't say that given the uncertainty of the testimony and the exhibits and the evidence that's been offered that burden has been met.
>
> I don't think things were done the way they should have been done, but I know of no way that I can give you the relief that you asked for. That's going to be my ruling and I'll prepare the order.

From the entry of an order dismissing the complaint with prejudice comes this appeal.

■ The appellant corporation's complaint alleged, *inter alia*, that it had suffered damage to its reputation and goodwill in the community as a result of appellee's conduct. Appellant offered no evidence as to the amount of any such damages. A party seeking damages has the burden of proving his claim, and if no proof is presented to the trial court that enables it to fix damages in dollars and cents, the trial court cannot award damages. *McCorkle* v. *Valley Forge Insurance Co.*, 11 Ark. App. 41, 665 S.W.2d 898 (1984). We agree with the chancellor that the appellant corporation failed to prove the amount of its actual damages for harm to its reputation and goodwill.

However, we agree with the appellant corporation that the chancellor improperly placed the burden of proof on the corpora-

tion on the issue of accounting for the corporation's property, and that the chancellor erred in dismissing that portion of the complaint seeking reimbursement for corporate funds not properly accounted for.

An accounting is an equitable remedy designed to provide a means for compelling one, who because of a confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due. 1 Am. Jur. 2d *Accounts and Accountings* § 45 (1962). An officer or director of a corporation occupies a fiduciary relation to her corporation. This relation is predicated on the fact that she has voluntarily accepted a position of trust and has assumed the control of the property of others, and as such, occupies a fiduciary relationship to the corporation and its stockholders. *Taylor* v. *Terry*, 279 Ark. 97, 649 S.W.2d 392 (1983); *see also Raines* v. *Toney*, 228 Ark. 1170, 313 S.W.2d 802 (1958); *Hornor* v. *New South Oil Mill*, 130 Ark. 551, 197 S.W. 1163 (1917); *Nedry* v. *Vaile*, 109 Ark. 584, 160 S.W. 880 (1913). The existence of a fiduciary relationship bestows equitable jurisdiction for a suit for an accounting. *Walters-Southland Institute* v. *Walker*, 217 Ark. 602, 232 S.W.2d 448 (1950). The duty to account has been specifically applied to corporate officers who control a corporate enterprise and its funds. *See id.*; *Red Bud Realty Co.* v. *South*, 96 Ark. 281, 299, 131 S.W. 340 (1910).

Here, appellee admitted that she managed and controlled the corporation's financial records. It was admitted that, although Parker's signature was to be required on all checks drawn on the corporate accounts, appellee had opened the account in such a way as not to require his signature or a prior authorization of her expenditures. She issued all checks on her own signature and upon her sole authorization. There was evidence that some of the checks were written to her own order and there were checks written for substantial amounts to her husband. None of those checks bore any indication of their purpose, authorization, or connection with the corporation's business. There were a number of other checks for substantial sums payable to shops and merchants. Those checks also gave no indication of their purpose or connection with the corporation or why they had been paid from corporate funds. From the information available to appellant corporation, it was established that there was a discrepancy

between the amount of money known to have been paid to the corporation and that which passed through its bank accounts, but the exact amount of unauthorized disbursements was unknown.

■■ Under the facts and circumstances reflected by this record, we conclude that it was error for the chancellor not to grant appellant's prayer for an accounting. The chancellor based his denial in part upon appellant's inability to prove the discrepancies. However, the burden of proving that the accounts had been properly handled should have been placed on the fiduciary rather than the corporation. In *Red Bud Realty Co. v. South*, *supra*, on facts not entirely unlike those present here, the court explained the duty of a corporate officer, who is entrusted with corporate funds, to account for those funds:

> The dealings of a trustee with the trust property are narrowly scrutinized by courts of equity. If impugned, they cannot stand unless characterized by the utmost good faith and candor. And the burden is upon the trustee to show their entire fairness. Where the duty of the trustee or agent requires it, he must keep true, regular and accurate accounts of all his transactions, both of receipts and disbursements, and should render a full and complete statement, supported by proper vouchers. As is said in the case of *Landis* v. *Scott*, 32 Pa. St. 495: "If he does not, every presumption of fact is against him. He cannot impose upon his principal, or *cestui que trust*, the obligation to prove that he has actually received what he might have received," or that he has not expended what he claims to have paid out. If he does not keep clear, distinct and accurate accounts, with proper vouchers, "all presumptions are against him, and doubts are taken adversely to him." [Citations omitted.]

*Red Bud Realty Co.*, 96 Ark. at 299, 131 S.W. at 348 (1910).

■ It is apparent from the chancellor's comments that he was swayed to some extent by the fact that neither appellee nor appellant now had the voucher book or a complete set of company records and ledgers. However, it was appellee's duty to keep and maintain these records of the corporation's affairs. She is now in no position to complain or contend that the duty is on the appellant to reconstruct the records of her administration. The

degree of difficulty in preparing a fiduciary account should not foreclose the need of it in an appropriate case. As stated in *Red Bud Realty Co. v. South, supra*, if appellee does not have the proper records, then every presumption must be taken adversely to her.

The decree of the chancellor is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DANIELSON and ROGERS, JJ., agree.