Steven SCHUELLER *v.* Allison SCHUELLER

CA 03-486 185 S.W.3d 107

Court of Appeals of Arkansas
Division IV
Opinion delivered June 2, 2004

Appellant, *pro se.*

*Griffin, Rainwater and Draper, PLC,* by: *Sandra C. Bradshaw,* for appellee.

Andree Layton Roaf, Judge. This case involves a *pro se* petition filed by appellant Steven Schueller requesting that the trial court require his former wife, Allison Schueller, to file a quarterly report of child- support funds as authorized by Arkansas Code Annotated section 9-14-103 (Repl. 2002). The trial court denied the petition. On appeal, Steven argues that the trial court erred in (1) ruling that 100% of the child-support payments did not have to go the child; (2) ruling that he was required to establish that the payments were not being utilized for the child in order for a quarterly report of funds to be ordered; (3) ruling that evidence that the payments were being spent inappropriately would be shown by proving that the money was spent in bars, clubs, liquor stores, casinos, and the like; (4) denying his petition for a quarterly report; (5) ruling that Allison's counsel could not be called to testify about her attorney's fees; and (6) suggesting that his petition for a quarterly report was frivolous. We find that there is no merit to his arguments and affirm.

The parties were divorced in 1999. The divorce decree gave Allison custody of the parties' youngest child, Nathaniel, now age fifteen, and awarded her child support in the amount of $570 per month. On June 19, 2002, Steven filed a Petition for Abatement of Child Support and on June 25, 2002, a Petition for a Quarterly Report of Child Support. The petitions were mailed to Allison's attorney, who filed a response to the Petition for a Quarterly Report on July 8, 2002.

A hearing on the Petition for a Quarterly Report was held on December 6, 2002. Steven appeared *pro se* and Allison appeared, represented by counsel. The following testimony was elicited at the hearing. Allison denied misusing the child-support funds she receives and contended that there was no evidence that the money was not being spent properly. Out of the $570, Allison pays $250 for medical insurance for her and her son, with the remaining money going toward daily living expenses, including household items, shoes, clothing, food, haircuts, and internet services. Allison stated that she spends seventy-five dollars per week on food; that approximately one-half of the household expenses could be attributed to Nathaniel; that one-third of the transportation expenses are attributed to Nathaniel because she takes him to school and to his sports activities; that her monthly household expenses for three people was $1970 in June 2001, but that since then only two people reside in the house and her expenses have increased; that Nathaniel also receives gifts and other things not associated with the household expenses, including gift certificates, a CD player, about $200 in birthday presents, and Christmas gifts. She testified that providing Steven with all of her receipts would be burdensome.

During Allison's testimony, Steven asked her if she was aware that 100% of funds received for child support must go to the child. At that point, the trial court stated that the law does not require that 100% percent of the funds go to the child, and that it is permissible for the money to be spent on common expenses such as utilities, house payments, rent, and insurance. The trial court also reminded Steven that the statutory language indicates that the court "may" order a quarterly report, and stated:

> I draw your attention to the first sentence, the Court "may." It is totally discretionary. It is entirely incumbent upon you to establish why it is necessary for an accounting. You need to establish that this child support is not being utilized for the child, but you don't do that by getting a quarterly report. You do that, for instance, if your child support checks were all being endorsed at Joe's Bar and Grill, or down at the Sleazy Club, but the burden is on you to prove that the report is necessary. It is not on her to prove that it is not necessary.

Steven responded that the statute authorizes an accounting to determine whether child-support payments are being used appropriately. He argued that the legislature's intent was that section 9-14-103 be

used as a vehicle to enforce the appropriate use of child-support payments. He also argued that the section requires that the child receive 100% of the funds and maintained that the statute requires "that it be shown that [Nathaniel] gets it." The trial court advised Steven to develop a record demonstrating that he was entitled to an accounting.

Steven also inquired about Allison's expenses, including her attorney's fees. Allison testified that her attorney's fees were $10,000. She testified that in addition to paying her attorney's fees, she has had to take off work and travel from Illinois to Arkansas to attend court with very little reimbursement, and asserted that Steven's intent was to harass her with numerous "nonsensical" claims. Steven then attempted to call Allison's attorney to testify about her fees. He argued that he was entitled to call the attorney to question her about the fees, pursuant to Rule 3.7 of the Model Rules of Professional Conduct. Allison's attorney objected, and the trial court sustained the objection.

Steven testified on his own behalf. He contended that he was seeking "justice for the child" stating, "I am paying a substantial amount of money for the support of my son, Nathaniel, and I would like to see that it all goes to him as the Legislature has indicated." He again argued that section 9-14-103 establishes a mechanism to enforce appropriate use of child support through quarterly reports, and opined that the quarterly report should be mandated in all proceedings where child support is ordered. Steven further asserted that he did not believe that more than forty percent of the child support is being spent on Nathaniel.

The trial court entered an order on January 10, 2003, denying Steven's Petition for a Quarterly Report, admonishing him about filing frivolous motions, and warning him that in the future frivolous motions would result in an award of attorney's fees for Allison. From the bench, the court stated that Steven had the burden of proving that the child support was being utilized for something other than the benefit of the child, mentioning by way of example, use of the funds at bars or clubs, and found that he had not met this burden. The trial court declined to award Allison any attorney's fees. From this order, Steven appeals.

Although Steven raises six separate issues on appeal, essentially his arguments can be addressed as four points. They are: (1) whether the trial court erred in ruling that 100% of the child-support funds did not have to go to the child; (2) whether the trial

court erred in denying his Petition for a Quarterly Report; (3) whether the trial court erred in ruling that Allison's counsel could not be called to testify about her attorney's fees; (4) whether the trial court's admonition regarding frivolous motions was appropriate.

Steven first argues that the trial court erred in ruling that 100% of the child-support funds did not have to go to Nathaniel. However, the order states only that Steven's Petition for a Quarterly Report is without merit, and makes no mention of whether 100% of the child-support funds must go to the child. In this regard, however, we note that, while the supreme court, in *Longinotti v. Longinotti*, 169 Ark. 1001, 277 S.W. 41 (1923), held that child-support payments are intended for the sole benefit of the child, the court has suggested that child support may be used for common household expenses, including rent and utilities. *See Black v. Black*, 306 Ark. 209, 812 S.W.2d 480 (1991). Moreover, when determining an appropriate child-support award, Arkansas courts consider expenses for food, shelter, utilities, clothing, medical expenses, educational expenses, dental expenses, childcare, accustomed standard of living, recreation, insurance, and transportation. Administrative Orders of the Supreme Court, No. 10., § V (2004).

Steven also challenges the denial of his Petition for a Quarterly Report. Included in this discussion are Steven's points that the trial court erred in ruling that he was required to show that the funds were being misused before it would order a quarterly report, and that the trial court erred in holding that Steven must show that the funds were being used in places such as bars, clubs, casinos, and liquor stores, before the quarterly report would be ordered.

Although Ark. Code Ann. § 9-14-103 was first enacted in 1947, it has not been construed by either this court or our supreme court. It provides:

> (a)(1) Upon application of any interested person to any judge of any court of record having jurisdiction of the cause of action, the court *may* require any person receiving as guardian of the person, either by adoption of law or order of any court, any funds, moneys, credits, goods, chattels, or anything of value for the support, maintenance, care, or custody of a minor child to file a verified

quarterly report of all moneys or goods received therefor. The report shall state the items, goods, or services, the date purchased, and from whom purchased.

(2) The quarterly report shall be filed with the clerk of the court or other body rendering the original order or decree between the first and fifteenth day of the calendar month immediately following the end of each calendar quarter.

(b) This section shall apply to all awards, orders, or decrees made by any court or legally constituted body making such award. Any report required to be made under this section shall be a public record.

(c) It is the purpose of this section and the intention of the General Assembly that any funds, moneys, credits, chattels, goods, or anything of value which have been or are ordered, decreed, adjudged, adjudicated, or awarded for the use and benefit of any minor child shall be used and inure solely to the use and benefit of the minor child for which it is or was ordered paid. (Emphasis added.)

This court reviews questions of statutory interpretation *de novo* because it is for the appellate courts to decide what a statute means. *Dooley v. Automated Conveyor Sys, Inc.*, 84 Ark. App. 412, 143 S.W.3d 585 (2004). The basic rule of statutory construction is to give effect to the legislative intent. *Id.* The doctrine of strict construction is to use the plain meaning of the language employed. *Id.* Where the language of the statute is unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. *Id.* The word "may" in Ark. Code Ann. § 9-14-103 is the operative word. *See Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001). "The word 'may' is usually employed as implying permissive or discretional, rather than mandatory, action or conduct and is construed in a permissive sense unless necessary to give effect to an intent to which it is used." *Id.* at 164, 40 S.W.3d at 237. On the other hand, the word "shall" in a statutory context indicates mandatory compliance with the statute's terms. *Id.* at 165, 40 S.W.3d at 238; *See also Cogburn v. Wolfenbarger*, 85 Ark. App. 206, 148 S.W.3d 787 (2004).

 It is clear that Ark. Code Ann. § 9-14-103 grants the trial court discretion to require a quarterly report when the circumstances warrant it. This wording is unambiguous and when

given its ordinary meaning must be interpreted to permit, not require, a quarterly accounting. *Dooley, supra; Marcum, supra.* Accordingly, the trial court's denial of Steven's petition was not erroneous, where he produced insufficient evidence to support the need for an accounting of the child-support funds. Contrary to Steven's assertions, an accounting has not been viewed as a vehicle by which the non-custodial parent can discover whether child-support payments are being properly used[1]. Rather, the court, *in its discretion*, can order an accounting upon a showing that it is warranted.

■ In this case, Steven failed to demonstrate that an accounting was warranted or necessary. Steven pays $570 per

---

[1] Other jurisdictions addressing this issue likewise hold that an accounting *may* be required upon a showing that the child-support funds are being used inappropriately. *See Rico-Perez v. Rico-Perez,* 734 So.2d 1177-78 (Fla. Ct. App. 1999) (stating that the complaining party must request an accounting and *demonstrate to the court that the facts warrant an accounting*; cautioning "that there is no reason a properly structured order for accounting of the child's expenses should become an intrusion into the [non-custodial parent's] records"); *Bacardi v. Bacardi,* 727 So.2d 1137-38 (Fla. Ct. App. 1999) (concluding that the parties' agreement intended that child-support payments cover more than what is ordinarily contemplated, and *"more significantly, no showing has been made in this case to warrant such a monumental intrusion into [the appellant's] financial records."); Kovenock v. Mallus,* 660 N.E.2d 638 (Ind. Ct. App. 1996) (stating that the accounting was properly denied where the appellant did not show that the children's basic needs where not being met, notwithstanding his allegations that the child support payments were being used to subsidize the appellee and her husband's business and living expenses, where the Indiana Code § 31-1-11.5-13(e) provides that the court may make an order, upon a proper showing of necessity, require an accounting; and noting that "an accounting is a 'pretty severe' undertaking"); *Olive v. Olive,* 650 N.E.2d 766 (Ind. Ct. App. 1995) (holding that it is within the trial court's discretion to order an account *upon a showing of necessity,* and finding that the trial court did not abuse its discretion in denying the accounting where the mother testified that she used the funds for the benefit of the child, notwithstanding dad's testimony that the money was being used for mother's personal expenses, including a trip to Hawaii); *Katz v. Katz,* 380 N.W.2d 527 (Minn. Ct. App. 1986) (affirming the trial court's denial of relief to the appellant, stating that there was no indication in the record that the appellee was misusing funds); *Trunzler v. Trunzler,* 431 So.2d 1115 (Miss. 1983) (affirming the trial court's denial of the appellant's petition for an accounting and opining that the trial court could require the custodial parent to periodically account for child support payment, *"if, but only if, the circumstances so require"); Cohen v. Barris,* 220 Ga. 131-32, 137 S.E.2d 469, 470 (1964) (holding that the petition "fail[ed] utterly to show ... that the mother has misused or misapplied the funds or reasons why the petitioner is entitled to an accounting," and stating that statements that the dad had "reason to believe" the funds were being misused, and hearsay statements of the mother to the children that they are destitute, did not show a misapplication or misuse of the child support funds).

month in child support, which the trial court indicated was below the chart amount based on Steven's income. Allison pays $250 for medical insurance alone. She is left with a little over three hundred dollars per month to provide Nathaniel with shelter, food, clothes, shoes, utilities, transportation, school supplies, funds for extracurricular activities, computer and internet, haircuts, and any other day-to-day necessity. She also provides gifts for holidays and other special occasions. Faced with this evidence, Steven stated that, from what he heard from Nathaniel, only forty percent of the money was being used for him. Steven did not allege that Nathaniel was not being properly cared for, nor did he present evidence of this bare allegation in support of his petition for the accounting. In his brief, he now asserts that Allison receives reimbursement for mileage from work, attended school, and sometimes purchases alcohol. However, these assertions, even if made to the trial court, would not support the grant of an accounting, and the trial court did not abuse its discretion in denying the petition.

We note, however, that Steven was not required to show that the child-support funds were being spent at bars, casinos, liquor stores, or the like, in order to invoke the statute, which provides that support funds "be used and inure solely to the benefit of the minor child. . . ." In the above-noted cases from foreign jurisdictions, the allegations against the custodial parents included purchasing new vehicles and taking expensive vacations and trips, to supporting live-in boyfriends or new husbands. We cannot conclude that only expenditures for activities perceived as vices or unwholesome in nature would warrant the grant of an accounting. However, in this instance, it is clear that the trial court was simply providing Steven with an example of circumstances under which an accounting might be in order, in ruling that he had not met his burden of proving that the accounting was necessary.

■ Steven's third point involves the court's refusal to permit him to question Allison's attorney about her attorney's fees. Allison's counsel objected, citing attorney-client privilege. Steven contended that he was entitled to question Allison's counsel about her fees because Allison was seeking an award of attorney's fees in connection with her defense of his petition. The trial court held that the Code of Professional Conduct did not provide for such testimony except in a dispute between an attorney and client regarding fees. Rule 3.7 of the Model Rules of Professional

Conduct provides, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where . . . the testimony relates to the nature and value of legal services rendered in the case." However, we need not consider the merits of this argument because the trial court declined to award Allison any attorney's fees. Thus, any error in this case would be harmless, and this court does not reverse absent a showing of prejudice. *Hibbs v. City of Jacksonville*, 24 Ark. App. 111, 749 S.W.2d 350 (1988).

Steven's final challenge involves the court's admonition regarding his frivolous petitions and motions. We first note that Steven received no adverse treatment as a result of this admonition. The trial court considered imposing attorney's fees, but declined to do so. He instead cautioned Steven about filing frivolous pleadings and warned that attorney's fees may be assessed in the future.

At any rate, Ark. R. Civ. P. 11 permits the trial court to order sanctions in cases where the court finds that a party or attorney has filed a pleading without any legal or factual basis or with the intent to harass. The record shows that Steven has filed a number of motions and petitions in this case. In past proceedings, Steven has likewise filed numerous petitions and motions, which required Allison to travel to Arkansas to defend against them. In fact, the trial court has awarded Allison attorney's fees on at least two prior occasions. Additionally, Steven has filed several appeals throughout the history of this case. Based on this history, we cannot say that it was improper for the trial court to issue an admonition to Steven.

Affirmed.

ROBBINS, J., agrees.

PITTMAN, J., concurs.

JOHN MAUZY PITTMAN, Judge, concurring. I agree with the result in this case. I write separately because I believe that the majority, although arriving at the correct result, has unnecessarily construed and limited Ark. Code Ann. § 9-14-103(a)(1) (Repl. 2002).

As the majority correctly notes, the statutory language providing that the trial court "may" order a guardian to submit a quarterly report of any funds used for the maintenance of a minor

simply grants the trial court discretion to require a quarterly report. This being the case, our conclusion that the trial court did not abuse its discretion under the facts of this case is a full and complete answer to the issues presented to us for decision.

The majority has gone farther, however, and has grafted onto the statute a requirement that the movant must in every case make a preliminary showing that the funds are being misused before the trial court may order an accounting. Because the very purpose of an accounting is to determine whether there has been misuse of funds, it appears odd to require a showing of misuse before any accounting may be ordered. The information necessary to make such a showing will seldom be in the possession of the movant. Generally, the burden of proving that accounts have been properly handled is placed on the fiduciary. *See generally A & P's Hole-in-One, Inc. v. Moskop,* 38 Ark. App. 234, 832 S.W.2d 860 (1992).

My overriding concern, however, is that this unnecessary dicta regarding the need to show misuse of funds before an accounting may be ordered will make it more difficult for the trial court to ensure that children are adequately cared for. An accounting can be a valuable tool for discovering whether the ordered amount of child support is adequate for the needs of the child, especially in cases where the child may have special medical requirements. An accounting could also be useful in determining whether the guardian is making effective use of the funds, *i.e.,* whether funds actually spent on the child are being spent wisely by the guardian. In my view, in the context of a child-support order where the State has a real and valid interest in the well-being of the child, there are other valid purposes for an accounting besides detecting misuse, and I would not unnecessarily construe the statute so as to prevent the trial court from employing an accounting for such purposes.

I respectfully concur.