# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-1981

_____

Lindy Bostic, individually and     *
derivatively in the name of and     *
on behalf of Goodnight Farms, Inc.,     *
an Arkansas corporation; Shannon     *
Bostic, individually and derivatively     *
in the name of and on behalf of     *
Goodnight Farms, Inc., an Arkansas     *   Appeal From the United States
corporation;     *   District Court for the
    *   Eastern District of Arkansas.
         Appellees,     *
    *
      v.     *
    *
Larry Goodnight; Goodnight Farms,     *
Inc., an Arkansas corporation;     *
    *
         Appellants.     *

_____

Submitted: January 12, 2006
Filed: April 24, 2006

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

HEANEY, Circuit Judge.

Larry Goodnight appeals from the district court's[1] findings of fact and conclusions of law. Specifically, he challenges the propriety and the accuracy of the district court's performance of an equitable accounting on the limited issue of self-dealing, following a jury determination that Goodnight had breached his fiduciary duty to Goodnight Farms, Inc. (Goodnight Farms). We affirm.

## BACKGROUND

Goodnight Farms was incorporated in Arkansas in February 2000 by Goodnight and his wife, Julie Goodnight. It was formed as a cattle operation that would buy, grow and feed, and then resell matured cattle for a profit. In January 2001, Lindy and Shannon Bostic purchased a 50% interest in Goodnight Farms, and Larry and Julie Goodnight retained the remaining 50% interest in the corporation. Under the new ownership structure, each assumed a management role in the operation of Goodnight Farms: Larry Goodnight served as president and sole director, Lindy Bostic as vice-president, Shannon Bostic as secretary, and Julie Goodnight as treasurer.

The shareholders' relationships soon soured. Due to disagreements regarding the management of the corporation and following the Bostics' discovery of bookkeeping irregularities, the parties agreed to dissolve the corporation and signed a dissolution agreement on April 16, 2002. The dissolution was in process[2] when, in early 2003, the Bostics sued Goodnight alleging deceit, violation of federal and state securities acts, and breach of fiduciary duty and corporate waste–a derivative claim brought on behalf of Goodnight Farms. The Bostics requested monetary damages, including attorneys' fees and costs, and an equitable accounting of the corporate funds. Goodnight filed an answer and asserted counterclaims against the Bostics for

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[2]The dissolution process continues at this time.

conversion and breach of contract. Goodnight also requested monetary damages and an equitable accounting.

Trial commenced in federal district court on October 4, 2004. During trial, the district court informed the parties that it, not the jury, would perform the equitable accounting on the self-dealing claim following the jury verdict. During the jury instruction conference, Goodnight's attorney expressed concern regarding the potential for double damages on the breach of fiduciary duty claim. The district court responded to Goodnight's concern by instructing the jury not to include damages related to self-dealing.

Following a six-day trial, the jury found for Goodnight on the state securities fraud act claim and his breach of contract counterclaim, but awarded no damages. The jury found for the Bostics on the deceit and derivative breach of fiduciary duty claim but awarded no damages, precluding any potential for double damages.[3] Both parties subsequently submitted briefs on the issue of the accounting related to Goodnight's alleged self-dealing.

On December 3, 2004, the district court entered findings of fact and conclusions of law on the self-dealing issue. In its conclusions of law, the district court, relying on Arkansas law, determined that Goodnight was a fiduciary of the corporation, and therefore had the burden of demonstrating that the funds he withdrew from the corporation and deposited into his personal account were expended for the benefit of the corporation. It found that Goodnight failed to meet this burden and that he had diverted $1,741,417.62 in corporate funds for his own benefit. Accordingly, the court ordered Goodnight to pay the Bostics their 50% share of the diverted amount:

---

[3]The Bostics' federal securities act claim and Goodnight's conversion claim were disposed of before the case was submitted to the jury.

$870,708.81.  The district court further concluded that Goodnight was not entitled to an accounting.

In response, Goodnight filed motions: (1) to amend the district court's findings of fact and judgment, (2) for a new trial, and (3) to alter or amend the judgment.  In support of the motions, Goodnight argued that the district court erred in finding against him on the self-dealing claim, that the district court erred in not crediting Goodnight's contributions toward the amount it awarded the Bostics, and that the district court made several mistakes of fact.  The district court denied Goodnight's motions.  He now appeals.

## ANALYSIS

Goodnight raises three issues related to the district court's accounting.  First, he asserts that the district court erred in not allowing the jury to conduct the accounting on the issue of self-dealing.  Second, he argues that the equitable accounting was inappropriate because the relief sought was legal rather than equitable.  Finally, he argues that if an accounting was appropriate, it should have credited his contributions to the corporation.

"We review the district court's factual findings for clear error and the legal conclusions it draws from these factual findings de novo."  Clay v. Bd. of Educ., 90 F.3d 1357, 1361 (8th Cir. 1996).  Goodnight alleges for the first time on appeal that the district court's performance of the accounting on the self-dealing claim violated his constitutional right to a jury trial.  The Seventh Amendment guarantees the right to a trial by jury "[i]n [s]uits at common law."  U.S. Const. amend. VII.  Nonetheless, this right may be waived.  See Fed. R. Civ. P. 38(d) (failure to timely serve and file a jury demand "constitutes a waiver by the party of trial by jury").  Additionally, even if a jury trial is properly demanded, a party may still waive its right to a jury trial by

failing to "object to the submission of a case to the judge instead of a jury." <u>Allen v. Barnes Hosp.</u>, 721 F.2d 643, 644 (8th Cir. 1983) (per curiam).

Goodnight argues that he did not waive his right to jury determination on the accounting issue because his trial counsel made the following statement: "What I'm worried about, Your Honor, is asking the jury to award those [damages] under something like common law or deceit and then submitting the fiduciary duty to you for accounting, which is what is being proposed, and those being awarded twice." (J.A. at 153-54.) Goodnight neglects the fact that the stated objection was made to specific items the Bostics proposed for consideration by the jury, not to the court's, rather than the jury's, determination of the self-dealing issue. (<u>See</u> <u>id.</u> at 153 (Goodnight's attorney states, "[t]hat's what they are going to ask you to do in the accounting. We can't let the jury decide.").) Furthermore, Goodnight's objection was to the potential for double recovery, not to the court's decision to consider the claim. (<u>See</u> <u>id.</u> at 154 ("The concern I guess that I have is that the jury is going -- on their verdict form is going to write down a number, and we are not going to know what of this it included and what it didn't.").[4]) The district court addressed this objection by instructing the jury not to award damages for the self-dealing claim, and by assuring the parties that it would review the jury verdict to be certain that double damages were not awarded. Since Goodnight's objection was based on the potential for double

_____

[4]Goodnight's attorney later reasserted his objection based on the potential for double recovery:

> Your Honor, so I have made myself clear on the record, it looks like we are trying to get the same case to the jury and then in front of the Court for an accounting under various theories. And that concerns me that if my client is found liable for any of it, that he's going to get stuck with a double recovery, not because you would make a mistake in that regard but because we wouldn't know what the jury included in their verdict.

(J.A. at 155-56.)

damages rather than the Seventh Amendment, we find that Goodnight waived his right to a jury trial on the self-dealing claim by failing to object to the submission of that issue to the district court rather than the jury. Allen, 721 F.2d at 644.

Even if Goodnight had properly objected to the district court's performance of the accounting, we find no error in characterizing this claim as equitable under Arkansas law. Arkansas law provides for shareholder derivative actions in equity to recover the corporation's property that was "wrongfully diverted" by one of the corporation's directors through the director's breach of trust. Red Bud Realty Co. v. South, 131 S.W. 340, 344-45 (Ark. 1910). As president of Goodnight Farms, Goodnight owed a fiduciary duty to the corporation and its shareholders. See A&P's Hole-in-One, Inc. v. Moskop, 832 S.W.2d 860, 863 (Ark. App. 1992). "The duty to account has been specifically applied to corporate officers who control a corporate enterprise and its funds." Id. "An accounting is an equitable remedy designed to provide a means for compelling one, who because of a confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due." Id.; see also Red Bud Realty, 131 S.W. at 347 (holding that director who diverted corporate funds to pay his personal debts must "account" for the corporation's funds that he diverted).

Goodnight asserts that the district court erred by relying on A & P's Hole-In-One, based on Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962). Goodnight argues that Dairy Queen held that if a plaintiff includes equitable and legal claims in the same cause of action, an equitable claim for an accounting is rendered legal for purposes of determining the right to a jury. As such, Goodnight further argues that A&P's Hole-in-One is not constitutionally sound because it conflicts with Dairy Queen. We find Goodnight's interpretation of Dairy Queen unpersuasive. There, the plaintiff sought an equitable accounting for damages resulting from an alleged breach of contract, and in that case, the trial court had denied the petitioner's demand for a jury trial based on its determination that the action was "'purely equitable' or, if not purely equitable,

whatever legal issues that were raised were 'incidental' to equitable issues, and, in either case, no right to trial by jury existed." Dairy Queen, 369 U.S. at 470.

The Supreme Court held that the petitioner was entitled to trial by jury on the factual issues regarding the breach of contract claim. Id. at 480. The Court did not, however, hold that the petitioner was also entitled to a jury trial on its claim of equitable relief, but rather that "the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims." Id. at 479-80 (emphasis added). In Ross v. Bernhard, 396 U.S. 531 (1970), the Supreme Court considered the right to a jury trial in actions involving both legal and equitable issues in the context of a shareholder derivative suit. There, the Court affirmed the right in a derivative suit to a jury determination of issues common to the legal and equitable claims joined in the same action, but declined to expand Dairy Queen to include the right to a jury trial on the "other" equitable claims. 396 U.S. at 537-38, 542-43 (citing Dairy Queen, 369 U.S. 469). Accordingly, "where a single action involves both legal and equitable claims, the court must conduct a jury trial of the legal claims first." Perkins v. Spivey, 911 F.2d 22, 34 (8th Cir. 1990) (interpreting Dairy Queen, 369 U.S. 469, and Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)); see also Lytle v. Household Mfg., Inc., 494 U.S. 545, 550 (1990) (recognizing that "Beacon Theatres emphasized the importance of the order in which legal and equitable claims joined in one suit would be resolved").

Here, the district court conducted a jury trial of the legal claims before it performed the equitable accounting. Furthermore, the jury found that Goodnight had breached his fiduciary duty to the corporation. The district court did not err in characterizing the accounting as an equitable, rather than legal, remedy under Arkansas law.

Finally, Goodnight alleges that, if it was proper for the district court to perform the accounting, then this court should remand and order the district court to perform

an accounting of all of the corporation's assets and debts. This accounting would include consideration of contributions Goodnight made to the corporation, and funds, if any, that the Bostics owe the corporation. Goodnight misinterprets the purpose of the accounting performed by the district court. The accounting it performed was essentially a calculation of restitution owed to the corporation by Goodnight based on his diversion of corporation funds for his own benefit. Goodnight presented no evidence of self-dealing by the Bostics.

Goodnight requests an accounting that is part of the dissolution process, in which all of the debts and accounts of the corporation are settled and then the remaining assets are distributed to the shareholders according to their interest in the corporation. It is during that process Goodnight's contributions to the corporation will be accounted for. See Ark. Code Ann. § 4-27-1405(A)(1)-(5). The district court did not err in limiting the accounting to only those funds that Goodnight diverted from the corporation for his own benefit.

## CONCLUSION

For the above-stated reasons, we affirm the district court.

_____