IN RE ESTATES of Jerome McKNIGHT; Deonte McKnight; Angela Marshall; Stephanie McKnight and Natasha M *v.* Bank of America, N.A.

07-371                                                        277 S.W.3d 173

Supreme Court of Arkansas
Opinion delivered February 21, 2008

*Gary Eubanks & Associates,* by: *Russell Marlin,* for appellants.

*Wright, Lindsey & Jennings, LLP,* by: *Isaac A. Scott, Jr., John G. Lile,* and *Judy Simmons Henry,* for appellee.

JIM HANNAH, Chief Justice. The Estates of Jerome Mc-Knight, Deonte McKnight, Angela Marshall, Stephanie McKnight, and Natasha Marshall appeal a September 11, 2006 order approving the accounting of Bank of America. The order terminated the McKnight-Marshall Discretionary Irrevocable Trust Agreement. Appellants were beneficiaries under this trust agreement. The order also released Bank of America as guardian of the estate[1] and from all liability arising from administration of the trust. Appellants allege that the probate court erred in failing to either grant their demand for a jury trial or grant a continuance until tort causes of action have been tried in circuit court, in approving the accounting and finding that there was no breach of a fiduciary duty, in granting the release of liability, and in failing to grant requested relief. We find no error and affirm. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1).

The facts giving rise to this case are set out at length in *In re Estate of McKnight v. Bank of America, N.A.,* 372 Ark. 456, 277

---

[1] This guardianship was established October 31, 1987. At that time, Ark. Code Ann. § 28-65-107 (1987) provided that the "jurisdiction of the probate court of all matters of guardianship . . . shall be exclusive. . . ." In 2003, section 28-65-107 was amended to place jurisdiction over guardianships in circuit court consistent with Amendment 80.

S.W.3d 179 (2008), and they need not be restated here. In *Estate of McKnight*, this court held that because the Estate in that case failed to file an objection to the accounting filed by Bank of America on May 7, 2004, it waived any right to appeal from the approval of that accounting.

As we noted in *Estate of McKnight*, Ark. Code Ann. § 28-52-107(c) (Repl. 2004) provides for objections to accountings. In the present case, no objections were filed by the Estates of Jerome McKnight, Deonte McKnight, and Angela Marshall, and the probate court did not rule on their claims. The order appealed from lists only beneficiaries Stephanie McKnight and Natasha Marshall as parties to the order. The probate court's letter opinion likewise references only Stephanie McKnight and Natasha Marshall. Now the Estates seek to avail themselves of this court's appellate jurisdiction; that is, this court is asked to review an order or decree of a lower court. *See Gwin v. Daniels*, 357 Ark. 623, 184 S.W.3d 28 (2004). However, there is no order or decree as to the Estates of Jerome McKnight, Deonte McKnight, and Angela Marshall, and this court thus lacks jurisdiction to consider their claims of error in the probate court. Stephanie McKnight and Natasha Marshall objected and obtained a ruling on their claims; therefore, we may hear their appeal.

Stephanie and Natasha suffered injuries in the explosion and fire on June 11, 1987, that have required significant care over the ensuing years. As a part of the settlement of the total tort claims by all family members, Stephanie received an original interest of $411,513.32 in the settlement and Natasha received an original interest of $282,235.90. There were seven others in the family who also held an original interest in the settlement, and in settling, the parties entered into the McKnight–Marshall Discretionary Irrevocable Trust Agreement. Pursuant to that agreement, Stephanie McKnight and Natasha Marshall were identified as suffering permanent injuries. They were declared in the trust to be "severely disabled for the foreseeable future" requiring "continuing support, assistance and supervision, possibly for the rest of their lives. . . ." The purpose of the trust with respect to Stephanie and Natasha was to "provide a continuing conservation and enlargement of the funds provided . . . to supplement all other financial and service benefits to which the Beneficiaries, or either of them, might be eligible as a result of her disability." The Trust specifically provided that it was not intended to "excuse the obligation of the natural parents to provide for the Disabled Beneficiaries'

continuing maintenance and basic support in accordance with the laws of the state of Arkansas." The Trust was to supplement the care Stephanie and Natasha received from their parents rather than to provide the basic support parents are expected to provide their children. However, the trust also provided that "nothing herein shall preclude the Trustee from purchasing those services and items which promote the Disabled Beneficiaries' happiness, welfare and development."

The administration of the Trust was problematic from the start. The investments of the trust funds were specifically dictated by the trust and greatly limited the trustee's ability to manage the funds. The natural parents did not obtain employment and were extremely slow in obtaining governmental benefits to which Stephanie, Natasha, and other members of the family were entitled. The trust was drafted under the understanding that the parents would assume these obligations.

### Right to a Jury Trial

Stephanie and Natasha first argue that the probate court erred when it denied their motion for a jury trial, or in the alternative, a stay until a separate tort action could be completed. They argued below that their right to a jury reached to "include all issues of tort arising out of, or incident to, Bank of America's administration of the McKnight-Marshall Trust and/or Estate; including negligence, breach of fiduciary duty, conversion and outrage."[2] The decision appealed from in the present case, however, is a probate order approving an accounting and releasing Bank of America as guardian of the estate. The order directed Bank of America to conclude the administration of the estate and close the Trust. Bank of America was also released within the probate proceeding from all liability arising from its and its predecessors' administration of the estate.[3]

■ This court has clearly stated that Arkansas Constitution art. 2, sec. 7 does not assure the right to a jury trial in all possible

---

[2] We note that Stephanie and Natasha have an action pending in Phillips County Circuit Court based on breach of fiduciary duty, negligence, conversion, and outrage. Phillips County Circuit Court case No. 2005-378.

[3] A guardianship of the estate was established by an order of the probate course in this case entered on October 31, 1987. Under Ark. Code Ann. § 28-65-107 (1987), jurisdiction of the probate court over all matters of guardianship, other than guardianships ad litem in other courts, was exclusive. *See Dent v. Wright*, 322 Ark. 256, 909 S.W.2d 302 (1995).

instances, but rather in those cases where the right to a jury trial existed when our constitution was framed. *First Nat'l Bank v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005 (quoting *Jones v. Reed*, 267 Ark. 237, 248, 590 S.W.2d 6 (1979)). "An accounting is an equitable remedy. . . ." *A & P's Hole-In-One, Inc. v. Moskop*, 38 Ark. App. 234, 239, 832 S.W.2d 860, 863 (1992) (citing 1 Am. Jur. 2d *Accounts & Accounting* § 45 (1962)). The constitutional right to a jury trial does not extend to a case in equity. *Southern Farm Bureau Cas. Ins. Co. v. Tallant*, 362 Ark. 17, 207 S.W.3d 468 (2005). Therefore, Stephanie and Natasha had no right to a jury in the proceedings in probate court.

Further, this court long ago held that the question of an accounting may not be submitted to a jury as if it were "a suit for the recovery of money":

> A trial of exceptions by a jury in the probate court is not contemplated by law. The function of the county and probate courts in such matters is rather that of an auditor clothed with judicial power, or that of a master stating an account. It is not usually such work as juries can perform. Any Circuit Court has the *power*, under the Code practice, to order any special issue or issues, to be tried by a jury, which before the Code, might have been so tried; but that has no application to the probate courts. It would not do to have exceptions to accounts burdened with costs of jury trials. The judges must take the responsibility of determining the facts as well as the law.

*Crow v. Reed*, 38 Ark. 482, 485 (1882); *see also In re Mel S.*, 15 Misc. 3d 1037, 838 N.Y. S. 2d 373 (2007) (no right to a jury trial in an accounting proceeding involving an alleged breach of fiduciary duty); *Bank One, N.A. v. Borse*, 351 Ill. App. 3d. 482, 812 N.E.2d 1021 (2004) (no right to a jury trial in an action by beneficiary against trustee seeking damages for breach of fiduciary duty).

■ However, Stephanie and Natasha also argue that the probate court erred when it failed to stay its action pending completion of the tort actions in circuit court. As noted, at issue is an accounting in probate court. The probate court was the proper forum for this proceeding on the accounting. *See, e.g., In re Guardianship of Vesa*, 319 Ark. 574, 892 S.W.2d 491 (1995). It was not error for the probate court to proceed pursuant to its jurisdiction and decide the question of the accounting in this guardianship. *See* Ark. Code Ann. § 28-65-107.

## Breach of Fiduciary Duty

Stephanie and Natasha next argue that the probate court erred in failing to find that Bank of America breached its fiduciary duty. Probate proceedings are reviewed de novo, and we will not reverse the decision of the probate court unless it is clearly erroneous. *Edmundson v. Estate of Fountain*, 358 Ark. 302, 189 S.W.3d 427 (2004). Stephanie and Natasha allege that the trustee "knowingly and willfully helped John McKnight to rape his children's trust." They further allege that the trustee provided "false and erroneous asset valuations," and that the trustee "attempted to hide its conduct from the beneficiaries, from the court, and from the court's appointed officers." In addition, they argue that the trustee committed "waste" and "abuse" of the trust finds. The probate court did not find that the evidence supported these allegations.

The alleged waste that Stephanie and Natasha discuss refers primarily to funds spent by the trustee on the family as a whole because of the parents' failure to assume their duties as parents and provide the basic support to their children as they agreed to under the trust agreement and as the law requires. The trust was intended primarily to provide funds to supplement and provide extra care for Stephanie and Natasha. However, the trustee was compelled to provide for the basic needs of the family so that Stephanie and Natasha would have a place to live and receive the basic needs of life. The trust directed that the trustee was to purchase the services and items needed to promote the Disabled Beneficiaries' happiness, welfare, and development.

The facts show that Stephanie and Natasha were living with their family at the time of the settlement. Shortly after the settlement was completed, and with court approval, the trustee purchased a home in Cabot where the family wished to reside so that they would be near their medical care providers. A vehicle was purchased, as well as necessities for the home, including setting up utilities. The family decided they did not like living in Cabot and moved back to eastern Arkansas at the expense of the trust. The trust purchased and then resold the home in Cabot.

The trustee felt that it had to keep the two disabled beneficiaries, "fed; keep a roof over their heads, and warm when the adults did nothing to assist. . . ." Therefore, much of the expenditure of funds that Stephanie and Natasha complained of as wasted was actually paid to provide for their basic support. The probate

court stated that it "agrees that some distribution amounted to the wasting of some of the trust funds. However, this court is of the opinion that the trustee had no other choice but to use the trust funds to support Stephanie McKnight and Natasha Marshall." The probate court also considered the argument that the trustee was dilatory in not taking the issue of the parents to the court; however, the probate court concluded that, "[t]his court would have been faced with the very same difficult situation as the trustee . . . The trustee took the side of caution to ensure that Stephanie McKnight and Natasha Marshall were cared for. This court would have taken the same course of action." Thus, the evidence does not support the claims of waste.

However, Stephanie and Natasha also assert that significant sums of money were not accounted for by the trustee. The probate court concluded that while the accounting over the many years of the trust was not perfect, the funds of the trust were accounted for, and they were used effectively for the trust purposes.

Stephanie and Natasha disagree and specifically complain that the trust was raided early on in that $162,059 was distributed between March 31, 1988, through May 27, 1988, to the parents. This is not so. Most of this money was spent to provide Stephanie and Natasha with housing and associated basic living costs, which necessarily also benefitted the entire family. The probate court concluded the amount of funds actually transferred to the parents was essentially within the limits set out in the trust terms.

The probate court finally stated that "this court cannot say that the trustee in this case did not use good faith, did not use good judgment or did not follow the global intent and purposes of the Trust." There was no evidence of investment losses since the inception of the trust. There was no evidence of self-dealing. The probate court considered this issue and concluded that, while there were occasional errors in disbursement of trust funds, the necessary adjustments were made so that over the life of the trust, each beneficiary received essentially the share to which he or she was entitled.

■ We note that over the life of the trust, three attorneys were appointed to review the administration of the trust, and none of them found reason to file a report with the probate court indicating that the trust was being handled improperly. The probate court provided a thirty-three page exhaustive letter opinion listing every issue now raised on appeal and thoroughly

discussed each issue. This court has carefully considered each issue raised by Stephanie and Natasha and concludes that the probate court was not clearly erroneous in its decision.

### Release From Liability

Stephanie and Natasha next argue that the probate court erred in releasing Bank of America from liability. The probate court's order released Bank of America from its liability and all liability arising out its predecessors' administration of the trust. The letter opinion stated that the "trustee is released from all liability as guardian of the estates in cases Nos. PR-87-209 and PR-88-48." As already noted, an accounting is an equitable remedy. *A & P's Hole-In-One, Inc., supra.* Further, it is "designed to provide a means for compelling one, who because of a confidential or trust relationship has been entrusted with property of another, to render an account of his actions and for the recovery of any balance found to be due." *A & P's Hole-In-One,* 38 Ark. App. at 239, 832 S.W.2d at 863. In an accounting, the court must either issue an order for the amount due from the trustee where improper administration of the trust is found or issue an order that nothing is due. 1 Am. Jur. 2d *Accounts & Accounting* § 67 (1994). The probate court considered the law and the facts and concluded that there was no misuse of funds by the trustee and nothing was due to the beneficiaries in the accounting. We do not find that the probate court was clearly erroneous in reaching this conclusion.

### Requested Relief

Stephanie and Natasha finally argue that the probate court erred in failing to grant the requested relief of restoration of the funds allegedly wasted, punitive damages against the trustee, or reversal of the probate court's order to permit the tort case in circuit court to proceed. As already discussed, the probate court found no actionable misconduct by the trustee. The relief was properly refused.

Affirmed.