2010 Ark. 358

**BAPTIST HEALTH, Appellant**

v.

**Bruce MURPHY et al., Appellees.**

No. 09–1070.

Supreme Court of Arkansas.

Sept. 30, 2010.

The Health Law Firm, Little Rock, by: Harold Simpson and Seth Ward, and Barber, McCaskill, Jones & Hale, P.A., by: Robert L. Henry, III, for appellant.

Everett & Wales, by: John C. Everett, Fayetteville, and Williams & Anderson PLC, Little Rock, by: Janet L. Pulliam and Benjamin D. Brenner, for appellees.

Mitchell, Blackstock, Barnes, Ivers & Sneddon, PLLC, Little Rock, by: Michael W. Mitchell and Emily Sneddon, American Medical Association, by: Leonard A. Nelson, and Sidley Austin LLP, by Jack R.

Bierig and Ben J. Keith, for intervenor/appellees.

RONALD L. SHEFFIELD, Justice.

The appellant in the instant case, Baptist Health (Baptist), appeals from the following three orders: (1) a February 2, 2009 order for permanent injunction; (2) an April 13, 2009 judgment entered in favor of the appellees; and (3) an August 14, 2009 order awarding $2305.88 in costs to the appellees. On appeal, Baptist contends that the circuit judge erred in holding that the appellees proved by a preponderance of the evidence their tortious interference and Arkansas Deceptive Trade Practices Act (ADTPA), Ark.Code Ann. §§ 4–88–101 to –115 (Repl.2001), claims. Baptist further maintains that the claims were barred by the doctrine of res judicata, that it was error to strike its demand for a jury trial, and that the circuit judge erred in awarding costs to the appellees. The appellees cross-appeal from an August 14, 2009 order denying their request for attorney's fees. Because this is a subsequent appeal, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1–2(a)(7) (2010). We affirm in part and reverse in part. The cross-appeal is moot.

Baptist is a private, charitable, nonprofit corporation that operates several full-service community hospitals in Arkansas. Appellees Bruce E. Murphy, M.D., et al. (the appellees) are cardiologists and partners in Little Rock Cardiology Clinic, P.A. (LRCC). The appellees hold an indirect interest in the Arkansas Heart Hospital (AHH) because LRCC owns 14.5% of AHH. Appellees Murphy and D. Andrew Henry, M.D., also directly own a percentage of AHH. The appellees are on the medical staff at AHH and are on the professional staff at Baptist Medical Center in Little Rock and admit patients to each facility. The American Medical Association and the Arkansas Medical Society (the intervenors) were granted leave to intervene by the circuit judge.

At its quarterly meeting in May 2003, the Board of Trustees of Baptist adopted an "Economic Conflict of Interest Policy" (Policy), which is the subject of the instant litigation. The Policy mandates the denial of initial and renewed professional-staff appointments or clinical privileges at any Baptist hospital to any practitioner who, directly or indirectly, acquires or holds an ownership interest in a competing hospital. The Policy defines a "competing hospital" as follows: "a hospital licensed in Arkansas or any subsidiary, component, division or other part of any such hospital" and "any entity that, directly or indirectly, holds an ownership interest or investment interest in a competing hospital and any entity that, directly or indirectly, has a management agreement with a competing hospital." The policy further states that "[o]wnership or investment interest" means an equity, debt or other interest, including but not limited to, stock, partnership interests, limited liability company memberships, as well as loans, bonds, or other financial instruments that are secured with the competing hospital's property or revenue or a portion of that property or revenue. Excluded from the foregoing definition of "ownership or investment interest" is any interest that was initially acquired on terms and conditions that were available to the general public.

"Ownership or investment interest" also means any interest, directly or indirectly, in real or personal property used by a competing hospital.

Two of the appellees, Doctors Murphy and Beau, had terms of appointment at Baptist that were set to expire on February 26, 2004. Both owned, either directly

or indirectly, ownership interests in AHH and, pursuant to the Policy, were deemed ineligible for reappointment by Baptist. The remaining appellees also own a direct or indirect interest in AHH and allege that they would have been similarly affected at the expiration of their terms of appointment.

On February 10, 2004, the appellees filed suit against Baptist in the U.S. District Court for the Eastern District of Arkansas, alleging that Baptist's actions violated various federal and state statutes and tortiously interfered with the doctor-patient relationship. Baptist moved to dismiss the complaint and, on February 24, 2004, an order of dismissal was entered based on a lack of subject-matter jurisdiction. *See Murphy v. Baptist Health*, No. 4:04CV00112, 2004 WL 1474655 (E.D.Ark. Feb. 24, 2004) (unpublished opinion).

The same day, on February 24, 2004, the appellees filed the instant lawsuit in Pulaski County Circuit Court. The complaint alleged violations of the federal Anti–Kickback Statute, 42 U.S.C. § 1320a—7b(b); the Arkansas Medicaid Fraud Act, Ark. Code Ann. § 5–55–111 (Repl.2005); the Arkansas Medicaid Fraud False Claims Act, Ark.Code Ann. § 20–77–902 (Repl. 2001); and the ADTPA. The complaint also asserted that Baptist's actions constituted tortious interference. The appellees sought a declaratory judgment that the Policy is contrary to federal and state law and to enjoin Baptist, preliminarily and permanently, from enforcing the Policy.[1] The circuit judge held a hearing on February 26, 2004, after which he granted the appellees' motion for preliminary injunc-

tion. Baptist brought an interlocutory appeal to this court, and we reversed and remanded for findings in accordance with Arkansas Rule of Civil Procedure 65(e) on the issue of the appellees' likelihood of success on the merits. *Baptist Health v. Murphy*, 362 Ark. 506, 209 S.W.3d 360 (2005) (*Baptist I*) (the court also ordered rebriefing).

Following *Baptist I*, the circuit judge entered a more detailed order, again granting a preliminary injunction. Baptist once more brought an interlocutory appeal to this court, arguing specifically that the circuit judge abused his discretion in concluding that (1) the appellees had a likelihood of success on the merits, and (2) the appellees would be irreparably harmed absent a preliminary injunction. While we found that the circuit judge erred with respect to some of the specific findings, we nevertheless held that he did not abuse his discretion in concluding that the appellees would likely succeed on the merits of their tortious interference claim and that they would suffer irreparable harm without a preliminary injunction. Thus, we affirmed the order granting a preliminary injunction. *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006) (*Baptist II*).

After *Baptist II*, but before the instant case was tried, LRCC filed an antitrust lawsuit against Baptist in the U.S. District Court for the Eastern District of Arkansas, alleging various violations of the Sherman Act.[2] On August 29, 2008, after the instant case was tried to the circuit judge, but before an order or judgment deciding

---

**1.** The complaint also sought compensatory and punitive damages, but the damages claims were dismissed without prejudice by an order entered on March 25, 2008.

**2.** According to the federal judge's order of dismissal, an amended complaint was filed

naming seven LRCC physicians as additional plaintiffs in the antitrust litigation. The federal district court order does not name these plaintiffs, but the third amended complaint reflects that they are the same doctors who filed against Baptist in the instant matter.

the matter was entered, the federal district court judge dismissed all of the federal claims against Baptist with prejudice. *Little Rock Cardiology Clinic, P.A. v. Baptist Health,* 573 F.Supp.2d 1125 (E.D.Ark. 2008), *aff'd,* 591 F.3d 591 (8th Cir.2009). Later, on September 26, 2008, Baptist moved to reopen the instant case, to admit new evidence, and for directed verdict, on grounds that the dismissal with prejudice of the federal claims had res judicata effect on the pending state claims. On December 16, 2008, Baptist filed an amended answer, raising res judicata as an affirmative defense. The same day, the circuit judge held a hearing on the motion, heard argument of counsel, and permitted Baptist to admit exhibits. However, on December 18, 2008, the judge entered an order denying the motion.

On February 27, 2009, the circuit judge entered an order granting a permanent injunction, and on April 13, 2009, a judgment was entered in the appellees' favor. Finally, the judge entered an order on August 14, 2009, awarding $2305.88 in costs to the appellees and denying their request for attorneys' fees. Baptist filed a timely notice of appeal from the permanent-injunction order on March 25, 2009. On April 14, 2009, an amended notice of appeal was filed from the judgment. Baptist again amended its notice of appeal on September 9, 2009, to include the order awarding costs to the appellees. The appellees filed a notice of cross-appeal on September 10, 2009, from the order denying attorneys' fees.

We address Baptist's arguments on appeal in a different order than they are raised in its briefs. First, we review the circuit judge's decision to deny the motion for directed verdict on res judicata grounds. Next, we turn to the contention that the rule of nonreview applies and precludes judicial review of the Policy.

Third, we look to Baptist's argument that the circuit judge erred in denying its request for a jury trial. After resolving these initial arguments, we will review the circuit judge's findings that the appellees proved their claims for tortious interference and under the ADTPA by a preponderance of the evidence. Finally, we address the circuit judge's order granting costs and denying attorney's fees.

## I. *Res Judicata*

We first address Baptist's contention that the decision of the federal district court in *Little Rock Cardiology Clinic v. Baptist Health* bars the present action pursuant to the doctrine of res judicata. 573 F.Supp.2d 1125 (E.D.Ark.2008), *aff'd,* 591 F.3d 591 (8th Cir.2009). Baptist first raised the affirmative defense of res judicata in a Motion to Reopen Case, Admit New Evidence, and for Directed Verdict, filed on September 26, 2008, almost two years after the initial complaint was filed in federal court. The motion was filed after the circuit judge held a bench trial, but before he had issued a decision. The judge heard Baptist's motion, reopened the case, admitted the new evidence, and denied the motion for directed verdict.

First, while Baptist styled its motion as one for directed verdict, because it was a bench trial, it was actually a motion to dismiss and will be treated as such. *See* Ark. R. Civ. P. 50(a) (2010); *see also Willis v. Crumbly,* 371 Ark. 517, 520 n. 1, 268 S.W.3d 288, 290 n. 1 (2007). In reviewing a circuit judge's decision on a motion to dismiss, we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *See, e.g., Born v. Hosto & Buchan, PLLC,* 2010 Ark. 292, 372 S.W.3d 324. In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor

of the complaint, and the pleadings are to be liberally construed. *Id.* Finally, our standard of review for the granting of a motion to dismiss is whether the circuit judge abused his or her discretion. *Id.* However, where, as here, there is no question of whether factual questions exist but rather the application of the legal doctrine of res judicata, we simply determine whether Baptist was entitled to judgment as a matter of law. *See, e.g., Beebe v. Fountain Lake Sch. Dist.*, 365 Ark. 536, 543, 231 S.W.3d 628, 634 (2006).

Res judicata means that "a thing or matter has been definitely and finally settled and determined on its merits by the decision of a court of competent jurisdiction." *Id.* at 544, 231 S.W.3d at 635 (2006) (citing *Hunt v. Perry*, 355 Ark. 303, 138 S.W.3d 656 (2003)). Res judicata consists of two facets, one being issue preclusion and the other claim preclusion. *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 388, 101 S.W.3d 211, 216 (2003). In its motion, Baptist alleged that the appellees' complaint should be dismissed based on claim preclusion. The claim-preclusion aspect of res judicata bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Beebe*, 365 Ark. at 545, 231 S.W.3d at 635. Res judicata bars not only the relitigation of claims that were actually litigated in the first suit, but also those that could have been litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *See id.*

It is well settled that federal district courts and state courts are separate jurisdictions, and identical cases between the same parties can proceed simultaneously. *See, e.g., Nat'l Bank of Commerce v. Dow Chem. Co.*, 338 Ark. 752, 759, 1 S.W.3d 443, 447 (1999); *see also Carter v. Owens–Illinois, Inc.*, 261 Ark. 728, 551 S.W.2d 209 (1977). In such a situation, this court has held that the first forum to dispose of the case enters a judgment that is binding on the parties. *Nat'l Bank of Commerce*, 338 Ark. 752, 1 S.W.3d 443. According to Baptist, the federal judge's order dismissing the federal claims with prejudice operates to preclude the state claims. The appellees disagree and argue that the state case and the federal case do not involve the same claims or causes of action and, further, that Baptist has waived any res-judicata defense by failing to raise it sooner. The intervenors also defend this argument on grounds that they were not parties to, nor in privity with, the parties in the federal action.

We hold that Baptist has waived its right to raise the defense of res judicata by tacitly approving of the claim split; therefore, it is unnecessary to address the other arguments of the appellees and the intervenors. It is clear that res judicata is an affirmative defense, Ark. R. Civ. P. 8(c), and, as such, it can be waived. *See, e.g., Seth v. St. Edward Mercy Med. Ctr.*, 375 Ark. 413, 291 S.W.3d 179 (2009). A waiver occurs when one, with full knowledge of material facts, does something that is inconsistent with the right or his intention to rely upon that right. *See, e.g., Cochran v. Bentley*, 369 Ark. 159, 169, 251 S.W.3d 253, 262 (2007); *see also Restatement (Second) of Judgments § 26 (2010)*. In the instant case, while Baptist was aware that both the state case and the federal case were proceeding simulta-

neously, it did not move in either jurisdiction to combine the cases nor did it raise res judicata until after the federal judge entered judgment in its favor.

Courts in other jurisdictions have held that a defendant waives the benefit of the rule against the splitting of a cause of action by waiting until one of two suits goes to judgment before raising an objection to splitting the cause of action in the suit still pending. *See Joseph Mfg. Co., Safeco Ins. Co. of Am. v. Olympic Fire Corp.,* 986 F.2d 416 (10th Cir.1993); *Ga. Ry. & Power Co. v. Endsley,* 167 Ga. 439, 145 S.E. 851 (1928); *Todd v. Cent. Petroleum Co.,* 155 Kan. 249, 124 P.2d 704 (1942); *Cassidy v. Berkovitz,* 169 Ky. 785, 185 S.W. 129 (1916); *see also Aikens v. Schmidt,* 329 N.J.Super. 335, 747 A.2d 824 (2000). In *Joseph Manufacturing Co., Safeco Ins. Co. of America,* the Tenth Circuit Court of Appeals provides a persuasive analysis for refusing to allow the defendant to raise a claim-preclusion defense after a state judgment is entered in its favor. In that case, state and federal actions were filed within one week of each other. Both actions proceeded simultaneously and, after a state-court judgment was entered, more than one year after the federal complaint was filed, the defendants moved for summary judgment in federal court.

In reversing the order granting summary judgment, the Tenth Circuit stated "[t]he facts make plain [the defendant] could have raised the potential of a preclusion defense at the federal pretrial hearing. The court and the parties would then have been alerted to the possibility, and plaintiffs could have taken steps to protect their interests in this case. That was not done." *Joseph Mfg. Co., Safeco Ins. Co. of Am.,* 986 F.2d at 419. The court recognized the defendant's argument that it could not raise the defense of claim preclu-

sion earlier because "the effect of the judgment in the state action was not final and therefore unknown until the jury returned its verdict." *Id.* However, the court rejected this contention, noting the defendant's knowledge of the pending state claim when the federal action commenced, and finding that "his failure to timely raise the defense cuts deeply against his claim of manifest injustice." *Id.* at 420. Finally, the court held that to allow the defendant to succeed on summary judgment under the circumstances would "permit[ ] defendant to ambush plaintiffs at the junction of state and federal jurisdiction." *Id.* at 420; *see also Martin v. Frayser,* No. 97–1452–WEB, 1999 WL 1678317, *2, 1999 U.S. Dist. LEXIS 21610, *6 (D.Kan.1999) (unpublished) ("Had the defendant raised a timely objection to the prosecution of two separate actions, [the plaintiff] could have protected her interests by bringing all of her claims in the state proceeding.").

Here, Baptist did not file an amended answer in Pulaski County Circuit Court to allege the affirmative defense of res judicata until over two years after the federal complaint was filed. More instructive is that Baptist never attempted to raise the issue of claim splitting or res judicata before the federal district court. Since Baptist was aware of the pending state action when the federal complaint was filed and made no effort to raise the issue of claim splitting or claim preclusion, we hold that it tacitly approved of the splitting of the appellees' claims and waived its right to assert the affirmative defense of res judicata. We agree with the Tenth Circuit Court of Appeals that to hold otherwise would permit Baptist to ambush the appellees at the junction of state and federal jurisdiction.

## II. *Rule of Nonreview*

On the merits of the instant appeal, Baptist begins by making a general public-

policy argument that economic conflict-of-interest policies, like the one at issue in this case, have been approved in other states, citing to four cases from other jurisdictions in support of its contention. These cases are not persuasive to this court because each involves distinguishable facts or legal concepts. *See Rosenblum v. Tallahassee Mem'l Reg. Med. Ctr., Inc.,* No. 91–589 (Fla.2d Cir.1992) (decision based on a Florida statute); *Williamson v. Sacred Heart Hosp. Pensacola,* 1993 WL 543002 (N.D.Fla.1993) (antitrust claim); *Walborn v. UHHS/CSAHA–Cuyahoga, Inc.,* No. CV–02–479572 (Ohio 2003) (unpublished) (policy upheld but tortious interference and deceptive trade practices were not claims); and *Mahan v. Avera St. Luke's,* 621 N.W.2d 150 (S.D.2001) (breach-of-contract claim).

 As a separate, but related, point on appeal, Baptist claims that the "rule of nonreview" applies to preclude courts from reviewing the Policy. The rule of nonreview provides as follows:

A private hospital has the right to exclude any physician from practicing therein. The action of hospital authorities in refusing to appoint a physician or surgeon to its medical staff, or deciding to renew an appointment that has expired, or excluding any physician or surgeon from practicing in the hospital, is not subject to review. The decision of the hospital authorities in such matters is final.

*Shulman v. Washington Hosp.,* 222 F.Supp. 59, 63 (D.D.C.1963). Despite the rule's application in certain instances, this court made clear in *Baptist II* that "[w]e do not believe that a private hospital may insulate itself from suit when, as here, there is a finding that the hospital's conduct has violated state law...." 365 Ark. at 130, 226 S.W.3d at 812. Therefore, we hold that the Policy is subject to review to

the extent the appellees have alleged that it violates state law and constitutes tortious interference.

## III. *Jury Demand*

On March 30, 2007, Baptist filed a demand for trial by jury. On February 21, 2008, the appellees moved to strike the jury demand. On February 28, 2008, Baptist and the appellees filed a stipulation for dismissal of claims, whereby the appellees agreed to dismiss their claims for damages, and Baptist agreed to dismiss its counterclaim. On March 3, 2008, the circuit judge filed the stipulation and entered an order striking Baptist's demand for a jury trial. On March 25, 2008, an order of dismissal without prejudice was entered on the appellees' damages claims and Baptist's counterclaim. On appeal, Baptist argues that the circuit court abused its discretion in granting the motion to strike. The appellees respond that Baptist was not entitled to a jury trial because the only relief sought was equitable.

 This court has held many times that the Arkansas Constitution does not assure the right to a jury trial in all possible instances, but rather in those cases where the right to a jury trial existed when the constitution was framed. *See, e.g., Estates of McKnight v. Bank of Am., N.A.,* 372 Ark. 376, 277 S.W.3d 173 (2008). Further, the right to a jury trial extends only to those cases that were subject to trial by jury at the common law. *Drug Task Force v. Hoffman,* 353 Ark. 182, 114 S.W.3d 213 (2003). In equitable proceedings, there was no right to a jury at the common law. *Colclasure v. Kan. City Life Ins. Co.,* 290 Ark. 585, 720 S.W.2d 916 (1986). Thus, the constitutional right to a jury trial does not extend to equity. *Estates of McKnight,* 372 Ark. 376, 277 S.W.3d 173.

The case of *S. Farm Bureau Cas. Ins. Co. v. Tallant* is instructive. 362 Ark. 17, 207 S.W.3d 468 (2005). In that case, this court held that the equitable issue of whether a plaintiff was made whole by a settlement did not warrant a jury trial and could be decided by the circuit judge. Southern Farm Bureau alleged that it should have been granted a jury trial because the case involved a vehicular accident and arose in tort. However, the circuit court found that the specific question in the case was not a tort question but an equitable one—whether the benefits Farm Bureau had paid out made the victim whole. This court affirmed, holding that the decision of whether the victim was made whole was an equitable one, and the right to a jury trial did not attach. *Id.* at 25, 207 S.W.3d at 472–73.

Here, an order of dismissal was entered on the issue of damages. Thus, the appellees waived their claim to damages and sought only a declaratory judgment and injunctive relief. Both declaratory judgments and injunctions have long been recognized as matters of equity. *See, e.g., IBAC Corp. v. Becker,* 371 Ark. 330, 334, 265 S.W.3d 755, 758 (2007) (injunction orders must be based upon equitable grounds to justify the extraordinary powers of equity); *Sebastian County Ass'n for Retarded Citizens v. Bd. of Zoning Adjustment of Fort Smith,* 265 Ark. 175, 577 S.W.2d 394 (1979) (an action may be maintained in equity for declaratory judgment). Thus, we affirm on this point.

## IV. *Tortious Interference and Arkansas Deceptive Trade Practices Act Claims*

Despite the fact that Baptist devotes much of its initial brief to a general discussion of economic conflict-of-interest policies, the essence of this appeal is that the circuit judge erred in finding that the appellees proved their tortious interference and ADTPA claims by a preponderance of the evidence. Thus we proceed to review the circuit judge's findings on these claims. The standard of review on appeal from a bench trial is not whether there is substantial evidence to support the findings of the circuit court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *See, e.g., El Paso Prod. Co. v. Blanchard,* 371 Ark. 634, 640, 269 S.W.3d 362, 368 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are solely within the province of the fact-finder. *Id.*

### A. Tortious Interference

On appeal, Baptist contends that the circuit judge erred "as a matter of law" in holding that appellees proved their tortious-interference claim by a preponderance of the evidence. It is Baptist's position that the evidence does not support any of the elements of a tortious-interference claim. The appellees respond that the circuit judge correctly ruled in their favor on this claim.

The elements of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See, e.g., K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC,* 373 Ark. 14, 26, 280 S.W.3d 1, 11 (2008). Our law also requires that the conduct of

the defendants be at least "improper," and we look to the factors in section 767 of the *Restatement (Second) of Torts* for guidance about what is improper. *See id.; see also Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 549–50, 215 S.W.3d 596, 608 (2005). In determining whether an actor's conduct is improper, consideration is given to the following factors:

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties.

*See K.C. Props. of N.W. Ark., Inc.*, 373 Ark. at 26–27, 280 S.W.3d at 11–12.

### 1. *Contractual relationship or business expectancy*

With respect to the first element of tortious interference, the circuit judge made the following relevant findings: (1) the appellees and their patients have contractual relationships wherein the physicians agree to provide care, the patients agree to accept the care, and the physicians are compensated; (2) the patient-physician relationship carries a reasonable business expectancy; (3) the physicians' relationship with referring physicians also carries a reasonable business expectancy. In support of these findings, the judge cited the testimony of appellee Murphy and other witnesses that "the patient-physician relationship is important and often physicians and patients will have relationships that span for years and even decades." The court also noted the "undis-

puted testimony" that continuity of care aids patient outcomes. Finally, the judge's order referenced the testimony of Dr. Henry, another appellee, that "referral relationships are the lifeblood of the existence of a specialty physician such as a cardiologist."

According to Baptist, the circuit judge clearly erred in finding the existence of a valid contractual relationship or business expectancy because "[n]ot one plaintiff identified a specific contract with which the policy interfered and instead talked generally about 'relationships.'" Baptist further contends that this "categorical approach" has been rejected by this court. *Citing, for example, Country Corner Food & Drug, Inc. v. First State Bank & Trust Co. of Conway*, 332 Ark. 645, 966 S.W.2d 894 (1998). However, *Stewart Title Guaranty Co. v. American Abstract & Title Co.*, 363 Ark. 530, 215 S.W.3d 596 (2005), as cited by the intervenors, is squarely on point.

In *Country Corner Food & Drug*, this court held that a complaint must indicate with what contract or with what business expectancy the defendant intended to interfere to sustain a cause of action for tortious interference. 332 Ark. at 654, 966 S.W.2d at 898. However, in *Stewart Title*, this court engaged in a lengthy discussion about what constitutes a valid business expectancy and held that "any prospective business relationship that would be of pecuniary value constitutes a valid business expectancy." 363 Ark. at 543, 215 S.W.3d at 603. The *Stewart Title* court affirmed a jury finding on this element where the witnesses testified that "long, long term relationships" were interfered with. *Id.* at 545, 215 S.W.3d at 604.

In the instant case, the circuit judge made specific findings, based on witness testimony, that there were contractual re-

lationships between the appellee physicians and their patients and that these relationships were long term. While Baptist disagreed with these findings, we hold that they are not clearly erroneous or clearly against the preponderance of the evidence, and we affirm on this point.

Baptist also contends that the circuit judge erred as a matter of law in finding that there was a valid contractual relationship or business expectancy because Baptist is not a "stranger" $_{18}$ to the contract or relationship between the physician appellees and their patients. Baptist specifically maintains that it is not a stranger "to the interwoven relationship whereby a Plaintiff would treat a patient at a Baptist facility." According to Baptist, this "stranger doctrine" has been adopted by this court and has not "been rejected by any court in any jurisdiction." Appellees disagree and contend that the doctrine is, in fact, a minority approach. The circuit judge distinguished the cases from other jurisdictions cited by Baptist and declined to apply the doctrine, specifically finding that it had not been adopted by Arkansas courts and was contrary to Arkansas public policy.

As a preliminary point, despite Baptist's contention to the contrary, the Arkansas cases cited by Baptist do not apply the stranger doctrine, as it has been utilized in a minority of jurisdictions. Instead, those cases stand for the common proposition that a party to a contract and its employees and agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract. *See, e.g., Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 959, 69 S.W.3d 393, 405 (2002). In other words, an action for tortious interference with a contractual relationship is based upon a defendant's conduct toward a third party. *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001); *St. Joseph's Reg'l Health Ctr. v. Munos*, 326 Ark. 605, 934 S.W.2d 192 (1996). Baptist cites this court to a case in which we held that one is not a "stranger" to a contract if he or she is directly interested in, or has sufficient ties to, the contract. *Rainey v. Travis*, 312 Ark. 460, 850 S.W.2d 839 (1993). *Rainey* is inapposite, however, because it involved the application of the parol-evidence$_{19}$ rule in a will dispute and was not a claim for tortious interference.

Thus, Baptist is left to rely on cases from other jurisdictions. *See Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143 (Ala.2003); *Atlanta Mkt. Ctr. Mgmt. Co. v. McLane*, 269 Ga. 604, 503 S.E.2d 278 (1998); *Cannco Contractor, Inc. v. Simmons First Bank of Lake Village*, 135 B.R. 608 (Bankr. E.D.Ark.1991); *J.K.P. Foods, Inc. v. McDonald's Corp.*, 420 F.Supp.2d 966 (E.D.Ark.2006); and *BCD, LLC v. BMW Mfg. Co.*, No. 6:05–CV–2152–GRA, 2007 WL 128887 (D.S.C. Jan. 12, 2007). In *Waddell & Reed*, the Alabama Supreme Court held that "one is not a *stranger* to the contract just because one is not a *party* to the contract." 875 So.2d at 1153 (emphasis in original). In *J.K.P. Foods*, a district judge in the Eastern District of Arkansas used the "stranger" language in dismissing a tortious-interference claim but actually held that a franchisor is not a stranger to a contract to sell the franchise and cannot be liable for tortious interference with a contract to sell the franchise. 420 F.Supp.2d at 969. While Baptist cites a few cases from other jurisdictions that use the "interwoven relationship" standard for immunity in tortious-interference cases, we decline to adopt their reasoning.[3]

**3.** In addition to the fact that Baptist has failed to cite any Arkansas authority in support of

On the facts of this case, it is clear that the contract or business expectancies with which the appellees claim Baptist intentionally interfered are those between the appellee [20]physicians and their patients. While the appellees often treat their patients at Baptist facilities, Baptist is not a party to those contracts or business expectancies under Arkansas law for purposes of tortious interference.

## 2. *Actual knowledge*

With respect to actual knowledge, the circuit judge found that Baptist CEO Russ Harrington and Board of Trustees members Jim Harris and Buddy Sutton testified that they knew the Policy would disrupt patients' relationships with the physician of their choice. On appeal, Baptist contends that the circuit judge erred by making a "generalized assumption" that Baptist knew the appellees would have relationships with patients and other physicians. It avers that there was no evidence that Baptist knew of a precise contract that had been breached or terminated. The appellees respond that this argument "merely rehashes its claim that [appellees] must prove each and every relationship with which the policy interferes."

We affirm on this element as well. The circuit judge pointed to specific testimony at trial to the effect that Baptist knew the appellees had long-term relationships with its patients and that those relationships would be disrupted by the Policy. The judge's findings on this point are not clearly erroneous or against the preponderance of the evidence.

## 3. *Intentional interference*

Regarding intentional interference, the circuit judge found that (1) a party is presumed to intend the natural and probable consequences of his or her actions; (2) Baptist knew and intended the result that patients choose between appellees and Baptist; and (3) Baptist wanted [21]the patients to choose it over their relationships with the appellees. The circuit judge cited the testimony of Baptist CEO Russ Harrington in support of these findings.

Baptist makes four arguments on this point. First, it maintains that the element has not been satisfied because there was no proof that any of the contracts or business expectancies were interfered with. Second, it argues that Arkansas law gives it the absolute right to refuse to deal with the appellees. Third, Baptist maintains that by implementing the Policy, it merely effectuated a contingency in an agreement between it and the appellees. In other words, the appellees' privileges at Baptist were subject to satisfying the requirements Baptist imposed. Any refusal to grant or reissue those privileges was merely the effectuation of a contingency. Finally, Baptist contends that there was no evidence that Baptist "desired to bring about any harm to" the appellees. The appellees respond that the circuit judge found that Baptist both knew of the consequences of the Policy and intended that result, a finding that they argue is supported by the evidence. Appellees further urge that Baptist did not have an absolute right to refuse to deal with the appellees.

Baptist's first argument on this point is more appropriately addressed under damages. Whether Baptist intended to inter-

the stranger doctrine, we are concerned that its adoption could have far-reaching consequences regarding the viability of tortious-interference claims. Defendants in tortious-interference claims are often "interested" in

the contracts in which they are alleged to have interfered. Application of the doctrine could therefore significantly extend immunity in tortious interference cases.

fere with a contractual relationship between the appellees and their patients or with business expectancies is not necessarily related to whether it was successful in its alleged interference. Thus, we address this argument below.

■ Second, Baptist's reliance on *Davis v. Southern Farm Bureau Casualty Insurance Co.*, 231 Ark. 211, 330 S.W.2d 276 (1959), is misplaced. *Davis* does indeed stand for the proposition that "a person has an absolute right to refuse to contract." *Id.* at 214, 330 S.W.2d at 278. However, this is not a case about the absolute right to refuse to deal or to contract. Rather, it implicates claims that a third party, Baptist, tortiously interfered with the contractual relationships or business expectancies between appellees and their patients. To read *Davis* as Baptist does would essentially eviscerate tortious interference as a valid claim in most instances. We decline the invitation to do so.

Baptist also makes a cursory argument that its actions in the instant case were merely the effectuation of a contingency. In its words, "[t]o the extent that Plaintiffs have an expectancy of treating their patients at Baptist, that expectancy is subject to the contingency that Baptist will continue to grant Plaintiffs staff 'privileges.'" This argument fails because Baptist misreads the contingency case it cites. *See, e.g., Donathan v. McDill,* 304 Ark. 242, 800 S.W.2d 433 (1990). In *Donathan,* no cause of action for tortious interference could lie because there was a contingency in the contract with which the defendant was alleged to have intentionally interfered. Here, the appellees' agreement with Baptist had a contingency. That is, the appellees could expect to have privileges at Baptist as long as they complied with Baptist's requirements. However, there is no indication that the appellees'

contracts or business expectancies with their patients were subject to that same contingency.

■ Baptist's last argument on this point, that the circuit court erred in finding the intent element was satisfied because there was no proof it "desired" to disrupt the contracts or business expectancies between appellees and their patients, fails. First, our caselaw does not require a finding that the defendant desire a certain result to prove intent. *See Stewart Title Guar. Co.,* 363 Ark. at 547, 215 S.W.3d at 606 (The defendant must have *either* desired to bring about the harm to the plaintiff *or* have known that the result was substantially certain to be produced by his conduct.). Second, relying on the testimony of Baptist's own witnesses, the circuit judge specifically found that Baptist both knew and intended the consequences of its actions. Those findings are not clearly erroneous or clearly against the preponderance of the evidence, and we affirm on this element as well.

### 4. *Damages*

With respect to damages, the circuit judge found as follows: (1) the appellees were required to prove actual damages even though they did not seek to recover money damages; (2) because appellees did not seek money damages, the requirement for proof with reasonable certainty of the amount of loss was not necessary; and (3) the Policy actually injured the appellees by disrupting their relationships with patients and referral sources.

In support of these findings, the circuit judge cited the testimony of appellee Dr. Ribero that after he was excluded from practicing at Baptist, he was denied the opportunity to treat one of his patients at Baptist, and one of his partners treated

the patient instead.[4] Dr. Ribero testified that he suffered the loss of professional fees associated with the treatment and that there was an interference with his relationship with his patient. The court also noted the testimony of Dr. Henry, appellee Bauman, and Baptist witness, Dr. Peters, to the effect that physicians without privileges at Baptist would lose referrals.

On appeal, Baptist first argues that the circuit judge erred in holding that the appellees were not required to prove the amount of damages with reasonable certainty, contending that it permitted the appellees to speculate as to an unascertainable harm. Baptist further avers that because the appellees did not seek money damages, the circuit court sought "to transform an ordinary tort action into a vehicle for unbridled use of injunctive power." The appellees and intervenors argue that Baptist confuses the need to prove that they were damaged with a requirement that they quantify monetary damages.

The appellees' argument is persuasive on this point. The foundational element of damages to sustain an action in tort is distinct from the specific monetary loss a plaintiff may be able to recover as damages. *See Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1 (one subclass appropriate for class certification on a contract claim because damages was not a foundational element, but the circuit judge properly denied certification of another subclass attempting to bring tort claims because damages was a foundational element and could not

be bifurcated for individual resolution). Rather, it is a requirement that the plaintiff prove the defendant proximately caused some damage, or injury, to the plaintiff. *See id.* Here, the circuit judge specifically found that the Policy injured the appellees because, in at least one instance, an appellee was precluded from treating his patients and thus lost the professional fees associated with that treatment. The judge also noted that the appellees were harmed because they were less likely to receive referrals, referred to by one witness as "the lifeblood of the existence of a specialty physician," as a result of the Policy. The judge's findings are not clearly erroneous or clearly against the preponderance of the evidence.[5]

## 5. *Improper conduct*

The circuit judge made extensive findings with respect to impropriety. He reviewed each of the seven *Restatement* factors and made the following findings. The nature of Baptist's conduct was against public policy because the Policy would disrupt the patient-physician relationship, discouraged specialty hospitals, suppressed competition, and harmed the institution of marriage. The evidence also failed to support Baptist's countervailing justification for the policy. Baptist's motive was to discourage competition by physicians who considered investing in speciality hospitals, and Baptist wanted to force patients to choose between it and the physician appellees. The appellees' interest was in patient-physician relationships and the conti-

4. Dr. Ribero was subject to the Policy before the circuit judge granted him leave to intervene in the instant action.

5. Baptist cites to other testimony, or lack thereof, which it contends is dispositive on this point. However, it is well settled that this court will not second-guess the fact-finder when it comes to the weight or credibility of the witnesses. While Baptist may believe that other witnesses were more credible, it was within the circuit judge's wide discretion to believe one witness over another.

nuity of care, which outweighed Baptist's interest in protecting its economic viability because no evidence supported Baptist's purported need for the Policy. While society has a strong interest in Baptist's continued viability, the evidence showed that its finances were never at risk. These factors, and others, led to the judge's ultimate finding that Baptist had acted improperly.

Baptist does not dispute these specific factual findings but instead argues that the refusal to deal, as a matter of law, cannot be improper conduct. However, as this court held in *Baptist II*, a private hospital cannot "insulate itself from suit" where there are findings that its conduct violated state law. 365 Ark. at 130, 226 S.W.3d at 812. Thus, we reiterate our holding that Baptist did not have an absolute right to refuse to deal in this instance.

The circuit judge also rejected Baptist's related suggestion that it is entitled to a "competition defense." In support of this argument on appeal, Baptist cites *Office Machines, Inc. v. Mitchell*, 95 Ark. App. 128, 234 S.W.3d 906 (2006). In *Mitchell*, the court of appeals held that it is no tort to beat a business rival to prospective customers. *Id.* at 130, 234 S.W.3d at 908 (citing *Kinco, Inc. v. Schueck Steel, Inc.*, 283 Ark. 72, 671 S.W.2d 178 (1984)). In *Kinco*, however, this court, while acknowledging the privilege to compete, affirmed the denial of a directed verdict because "there was substantial evidence from which the jury could find that the appellant employed wrongful means to interfere with the appellee's expectancy." The *Kinco* court also noted that the defendant's actions were not directed toward fair competition but were directed toward unfair evasion of competition.

In the instant case, the circuit judge, sitting as a trier of fact, heard the testimony, reviewed the evidence, and found that Baptist acted improperly. The judge specifically found that Baptist intended to suppress the competition brought by specialty hospitals. The judge also found that Baptist's proffered justification for the Policy was pretextual, that its motive was to make patients choose between their doctors and Baptist, and that it directly and proximately caused damage to the appellees. Based on these findings, Baptist was not entitled to a competition defense.

In sum, the circuit judge made extensive findings on impropriety, which, apart from its refusal-to-deal and competition-defense arguments, are largely unanswered by Baptist. We affirm on this point because the circuit judge's findings are not clearly erroneous or clearly against the preponderance of the evidence.

### B. The Arkansas Deceptive Trade Practices Act

The circuit judge also found that the appellees proved their ADTPA claim by a preponderance of the evidence. The permanent-injunction order specifically found that Baptist's actions in adopting the Policy were connected to business, commerce, or trade; that the plaintiff suffered actual damages or injury; and that the Policy was an unconscionable trade practice because it "affronts the sense of justice, decency, and reasonableness because it impinges on fundamentally important public policies without adequate countervailing justification."

On appeal, Baptist argues that the circuit court erred in this respect because there is no private cause of action to seek injunctive relief under the ADTPA. The appellees respond that the ADTPA plainly provides a private cause of action in such cases. The appellees are mistaken, and

we reverse the judgment in appellees' favor with respect to the ADTPA claim.

■■■■ Our review of this point on appeal requires interpretation of the ADTPA; accordingly, the standard of review is de novo, because it is for this court to determine what a statute means. *See, e.g., Wal–Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P.,* 374 Ark. 489, 288 S.W.3d 627 (2008). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* Reviewing issues of statutory interpretation, this court first construes a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous, conveying a clear and definite meaning, the court does not resort to the rules of statutory construction. *Id.* If there is an ambiguity, the court looks to the legislative history of the statute and other factors, such as the language used and the subject matter involved. *Id.* The court strives to reconcile statutory provisions relating to the same subject to make them sensible, consistent, and harmonious. *Id.*

■■■■ Arkansas Code Annotated section 4–88–113(f) states that "[a]ny person who suffers actual damages or injury as a result of an offense or violation as defined in this chapter has a cause of action *to recover actual damages,* if appropriate, and reasonable attorney's fees." Ark.Code Ann. § 4–88–113(f) (Repl.2001) (emphasis added). In his permanent-injunction order, the circuit judge referred to the tortious interference damages section in finding that the appellees suffered actual damages or injury. However, even though that finding is not clearly erroneous, the ADTPA makes clear that such injury merely provides a private cause of action *"to recover actual damages." Id.* In other words, the plain language of the ADTPA

does not provide for a private cause of action seeking injunctive relief.

■■■■ In response to this argument, the intervenors suggest that "[t]he absence of an express provision authorizing private plaintiffs to seek injunctive relief merely reflects the fact that Arkansas courts of equity have inherent power to grant injunctive relief in private actions." This is a circular argument that completely ignores the rules of statutory construction. Where there is a statute enacted by the General Assembly that purports to give plaintiffs a private cause of action, the remedy is limited to what the statute expressly provides. *See Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC,* 375 Ark. 379, 385, 291 S.W.3d 190, 195 (2009) (under the doctrine of expressio unius est exclusio alterius, the express designation of one thing may be properly construed to mean the exclusion of another). No "inherent authority" provides for injunctive relief where the statutory language expressly allows a private plaintiff "to recover actual damages." Ark.Code Ann. § 4–88–113(f).

Finally, in *Wallis v. Ford Motor Co.,* 362 Ark. 317, 208 S.W.3d 153 (2005), this court made clear that

[a]s indicated in the plain language of the statute, the responsibility for civil enforcement of the ADTPA rests largely with the Attorney General. Under section 4–88–113(a)(2), the Attorney General may institute a proceeding to restore moneys or real or personal property to any purchaser who has suffered any "ascertainable loss" as a result of the use or employment of practices declared to be unlawful under the ADTPA. In contrast, under subsection (f) of section 4–88–113, a private cause of action is limited to instances where a person has suffered actual damage or injury as a result of an offense or violation as defined in

this chapter. Pursuant to section 4–88–113(f), *a person may only recover his or her actual damages and reasonable attorney's fees.*

(Emphasis added.) The appellees attempt to dismiss this case as unpersuasive. However, we are persuaded that the plain language of the statute and our decision in *Wallis* make clear that a private cause of action for injunctive relief is not available under the ADTPA. We reverse |₃₀the circuit judge's finding that the appellees proved a claim under the ADTPA.

## V. Costs

Baptist also filed a notice of appeal from the circuit judge's order awarding costs to the appellees. We affirm on this point.

 First, the only reference Baptist makes to the costs issue is in the last sentence of its opening brief, which reads, "For all of these reasons, the Trial Court's Order, including the award of costs and the Judgment should be reversed and the case dismissed." We have repeatedly made clear that we will not address arguments that are not sufficiently developed and lack citation to authority. *See, e.g., Gatzke v. Weiss,* 375 Ark. 207, 289 S.W.3d 455 (2008). Furthermore, we do not reverse a circuit judge's order awarding costs unless there is an abuse of discretion. *See City of Fort Smith v. Didicom Towers, Inc.,* 362 Ark. 469, 478, 209 S.W.3d 344, 351 (2005) (an award of costs is within the sound discretion of the trial court). In the instant case, the judge awarded the appellees $2,305.88 in costs. This was not an abuse of discretion. We affirm the order awarding costs.

## VI. Cross–Appeal

On cross-appeal, the appellees contend that the circuit court erred in failing to award attorneys' fees after finding that they were actually injured by Baptist's violation of the ADTPA. Baptist asserts that the doctors are not entitled to attorneys' fees because their request is barred by res judicata, their case was primarily a tort case where fees were not available, they failed to recover actual damages thus precluding any fees, and they failed to |₃₁prove they, as individual plaintiffs, paid any fees.

In light of our reversal on the appellees' ADTPA claim, the cross appeal is moot.

## VII. Conclusion

We therefore hold that res judicata does not bar the instant claims because Baptist waived the defense by tacitly consenting to the two actions in state and federal court. We also affirm the circuit judge's order striking Baptist's request for a jury trial. We affirm the circuit judge's finding that the appellees proved their tortious-interference claim by a preponderance of the evidence and, therefore, also affirm the judgment granting declaratory judgment on that claim and enjoining Baptist from denying the appellees professional staff appointment and clinical privileges on the basis of the Policy.[6] We reverse the finding that the appellees proved a claim under the ADTPA by a preponderance of the evidence and, as a result, the cross-appeal with respect to attorney's fees is moot. Finally, we affirm the order granting costs to the appellees.

Affirmed in part, reversed in part, cross appeal moot.

---

6. On appeal, Baptist does not argue that the circuit judge erred in granting a permanent injunction once it found the appellees proved their tortious interference and ADTPA claims. Instead, it argued exclusively that those findings were in error. Since we affirm on the tortious interference findings, we also affirm the permanent injunction.

Special Justice CLARK MASON joins.

Special Justice JULIE DeWOODY GREATHOUSE, BROWN, J., and Special Justice GEORGE ELLIS concur.

₂CORBIN, DANIELSON, and WILLS, JJ., not participating.

JULIE DeWOODY GREATHOUSE, Special Justice, concurring.

I would reach the same result as the majority on the issue of res judicata but for a different reason.

Rather than address the merits of Baptist's argument that *res judicata* bars Appellees' and Intervenor's claims, the majority holds that Baptist has waived the right to defend on this ground by tacitly agreeing to a split of claims made by Appellees and Intervenors. To support this conclusion, the majority cites to several cases from other jurisdictions. However, these opinions involved situations in which a plaintiff sought to split a single cause of action. *See Joseph Mfg. Co. v. Olympic Fire Corp.*, 986 F.2d 416 (10th Cir.1993) (decided on federal procedural grounds but noting that a state statute mandated that all negligence-based claims be tried in one suit); *Todd v. Cent. Petroleum Co.*, 155 Kan. 249, 124 P.2d 704 (1942) (plaintiff divided contractual claims related between two state-court actions based on the time of service rendered); *Georgia Ry. & Power v. Endsley*, 167 Ga. 439, 145 S.E. 851 (1928) (plaintiff brought separate state-court actions for personal injuries and property damage arising from a single negligent act); *Cassidy v. Berkovitz*, 169 Ky. 785, 185 S.W. 129 (1916) (plaintiff brought claims for personal injuries and property damage in two state lawsuits although they constituted a single cause of action); *Martin v. Frayser*, 1999 WL 1678317 (D.Kan. Dec. 28, 1999) (decided on federal procedural grounds but noting that federal wrongful-death action and state personal injury suit were likely considered part of the same cause of action under state law). In the case at bar, ₃₃Appellees and Intervenors have never attempted to split individual causes of action. Instead, they divided distinct claims among the state and federal courts—federal antitrust claims were filed in federal court and state tort and statutory claims were filed in state court. As this court has previously recognized:

> Federal district courts and state courts are separate jurisdictions. Identical cases between the same parties can be pending in each court at the same time. It is the same situation as if identical cases between the same parties were pending in different states. In such a situation the first forum to dispose of the case by trial enters a judgment that is binding on the parties.

*Carter v. Owens–Ill., Inc.*, 261 Ark. 728, 729–30, 551 S.W.2d 209, 209–10 (1977). Thus, even if adopted in this state, the claims-splitting rule utilized in other jurisdictions does not affect Baptist's ability to assert res judicata as a defense to this action. As such, it is necessary to consider the merits of Baptist's claim-preclusion defense.

It is well established that res judicata bars relitigation of a claim if (1) the first suit resulted in a judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith: (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Jayel Corp. v. Cochran*, 366 Ark. 175, 178, 234 S.W.3d 278, 281 (2006). With respect to the fourth element, this court has previously held that "[r]es judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated." *Id.* However, "res

judicata ... [is] only applicable when the party against whom the earlier decision is being ∣₃₄asserted had a fair and full opportunity to litigate the question in issue." *Cater v. Cater*, 311 Ark. 627, 632, 846 S.W.2d 173, 176 (1993).

Baptist contends that res judicata bars the instant action because there is a presumption that the district court would have exercised its supplemental jurisdiction over Appellees' and Intervenor's state-law claims had they been asserted in Appellees' federal antitrust lawsuit. Appellees respond that the state case and the federal case did not involve the same claims or causes of action, and that the federal court would not have exercised supplemental jurisdiction over the state law claims related to the Policy.

Baptist did not cite to, nor am I aware of, any case law to demonstrate that such a presumption has been adopted in Arkansas. If such a presumption had been adopted in Arkansas, the authorities cited by Baptist from other jurisdictions explicitly permit rebuttal of the presumption. In *Whalen v. United Air Lines, Inc.*, 851 P.2d 251, 254 (Colo.Ct.App.1993), the court stated that a "plaintiff may be able to demonstrate that the court would decline to exercise its jurisdiction by referring to previous instances in which that court has consistently declined to exercise its discretionary jurisdiction over similar claims." ("The number of ways in which [the fact that the federal court would have declined jurisdiction] may be demonstrated is limit-

ed only by the imagination of counsel.") Restatement Second of Judgments § 25, illustration 10, cited by Baptist provides another example of when a court might decline jurisdiction: "because the federal claim, though substantial, was dismissed in advance of trial." Here, it is clear that Appellees' federal antitrust claims were dismissed ∣₃₅pursuant to Rule 12(b)(6) before any trial could be held. Additionally, Appellees have identified a prior opinion in which Judge Holmes declined to exercise supplemental jurisdiction over state-law claims, explaining that no published Arkansas case was directly on point and that significant issues of Arkansas public policy were involved. *Ark. Blue Cross & Blue Shield v. St. Vincent Infirmary*, No. 4:03–CV–662, 2006 WL 796949 (E.D.Ark. Mar. 27, 2006) (unpublished). Here, given the extent to which Baptist relies on cases from other states on the merits of its appeal, it is clear that Appellees' and Intervenors' state-law claims involve novel issues of state law. Further, in light of the fact that both parties (and the trial court) devoted significant time to discussing issues of public policy, it is equally clear that their state-law claims involve significant issues of Arkansas public policy. Additionally, Appellees noted that a preliminary injunction had already been issued by the state court at the time of the federal court's final decision, so it is likely Judge Holmes would have been hesitant to exercise supplemental jurisdiction.[1]

Baptist cites two decisions where Judge Holmes did exercise supplemental jurisdic-

---

1. Baptist also cites *Hancock v. First Stuttgart Bank & Trust Co.*, 53 Ark. App. 150, 920 S.W.2d 36 (1996), as rejecting an argument identical to Appellees and Intervenors' claim that the federal court would have declined to exercise jurisdiction. In the *Hancock* case, however, the plaintiff filed both state and federal claims in federal court but her state claims were not addressed. *Id.* at 151, 920 S.W.2d 36. When plaintiff then filed identical state-law claims in state court, the court of appeals dismissed on res judicata grounds, noting that the district court had jurisdiction to exercise supplemental jurisdiction over her pendent state-law claims. *Id.* at 153, 920 S.W.2d 36. Here, in contrast, Appellees never alleged state-law claims in their federal antitrust action. same doctors who filed against Baptist in the instant matter.

292

tion in an attempt to demonstrate that he would have similarly heard Appellees' state-law claims. It is not Appellees' argument, however, that Judge Holmes never exercises supplemental jurisdiction but that he would not have exercised it here in a case that involved novel issues of state law and significant issues of public policy.

Additionally, even if the court were to presume that Judge Holmes would have exercised supplemental jurisdiction over Appellees' state-law claims, Intervenors' claims would not be barred by res judicata. As described above, res judicata is inapplicable unless both suits at issue involve the same parties or their privies. *Jayel Corp.*, 366 Ark. at 178, 234 S.W.3d 278. The court has never required strict privity to satisfy this fifth element. *Id.* at 178, 234 S.W.3d 278. However, "there must be a 'substantial identity of parties'" to apply the doctrine. *Id.* "Privity of parties within the meaning of res judicata means a person so identified in interest with another that he represents the same legal right." *Bruns Foods of Morrilton, Inc. v. Hawkins*, 328 Ark. 416, 418, 944 S.W.2d 509, 510 (1997) (citation omitted). Although never explicitly addressed by this court, other jurisdictions agree that whether parties are in privity is a factual question that is only reviewed for clear error. *See, e.g., E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir.2004) ("However, whether a party is in privity with another for preclusion purposes is a question of fact that is reviewed for clear error."); *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1276 (1989) ("The determination of identity between litigants for the purpose of establishing privity is a factual question, and the District Court should not be reversed unless its determination is clearly erroneous.") (citations omitted); *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir.1981)

("Whether privity exists in a given case is a question of fact.").

It does not appear that the trial court committed clear error as there was sufficient reason to find that there is not "substantial identity of parties" between Appellees and Intervenors. Although they share similar interests, Intervenors do not have any right of control over Appellees or vice versa. Further, Intervenors represent a much larger interest than that held by the Appellees. Intervenors represent physicians throughout the state who will be prohibited from working at any Baptist facility in the state if they (or a family member) has a financial interest in a competing facility. This is sufficient support for the trial court's finding that privity was absent between Intervenors and Appellees. The court need not engage in any further review absent clear error by the trial court.

BROWN, J., and Special Justice GEORGE ELLIS join.